355 P.2d 900

STATE of Arizona ex rel. Robert MORRI-
SON, Attorney General, Appellant,

v.

Hulen F. McMINN and Pearl Marie McMinn,
his wife, Appellees.

No. 6644.

Supreme Court of Arizona.

Oct. 5, 1960.

Robert Morrison, formerly Atty. Gen.,
and Charles L. Hardy, Asst. Atty. Gen.,
on the briefs; Wade Church, presently
Atty. Gen., and Jay Dushoff, Asst. Atty.
Gen., on oral argument, for appellant.

Carl Tenney, Phoenix, for appellees.

UDALL, Justice.

The plaintiff State of Arizona, herein-
after referred to as the State, brought an
action in the superior court of Maricopa

County to condemn for public use property owned by defendants. After full trial the jury returned a verdict granting the condemnation and fixing the price to be paid at $4,500 and judgment was entered thereon. Thereafter the trial court vacated the judgment and granted defendants' motion for new trial. The State appealed, alleging as sole error that the trial court abused its discretion in granting the motion.

■ Although defendants in their motion for new trial state numerous grounds, the trial court specified that the motion was granted because of the insufficiency of damages. We are therefore limited to that ground in reviewing the exercise of discretion by the trial court. City of Phoenix v. Harlan, 75 Ariz. 290, 255 P.2d 609.

■ While it is true that the granting of a new trial is to a great extent discretionary with the trial court, such discretion, although broad, is legal and not arbitrary and must be exercised according to reason and law. Kotsonaros v. State of Minn., 79 Ariz. 368, 290 P.2d 478; City of Phoenix v. Harlan, supra; Zevon v. Tennebaum, 73 Ariz. 281, 240 P.2d 548. The trial judge must of course have wide discretion because of his intimate relation to the trial and primary justice. This does not mean, however, that this court should abandon all supervision and fail to impose the limitation of legal standards on the exercise of trial court judicial discretion. Thus, where the probative force of the evidence clearly demonstrates that the verdict of the jury is correct, the trial judge exceeds the bounds of judicial discretion in granting a new trial and it is the duty of this court to reverse the action. See, Smith v. Moroney, 79 Ariz. 35, 282 P.2d 470; Bradley v. Philhower, 81 Ariz. 61, 299 P.2d 648.

■ After a careful examination of the record in light of these principles we have concluded that it was an abuse of discretion for the trial judge to grant the motion for new trial in this case.

The property in question is an irregularly shaped parcel located at the northeast corner of Sherman Street and 23rd Avenue, just outside the city limits of Phoenix, in a subdivision know as Sellwell. The defendant purchased the property in 1947 for $4,500. At the time of purchase there was no zoning ordinance in effect in Maricopa County and the defendant could have used his property for any lawful purpose. In 1951, the Board of Supervisors established a county zoning ordinance and the property which is the basis for this litigation, together with other adjacent property, was put in a general residential zone. In 1952 it was given an R-4 classification which permits single or multiple family homes. From the date of adoption of the zoning ordinance until the bringing of this action in 1957, the property remained in the same zone classification and no attempt had been

made by the defendants or adjacent property owners to have the area rezoned for purposes other than residential. At the trial the State contended the fair market value was governed by residential use. On the other hand the defendants contended that the property was more suitable for industrial use which would have made it more valuable than if valued for residential use only.

The testimony of the State's witnesses was to the effect that the property was available only for residential purposes; that even if available for commercial or industrial purposes its irregular shape and unapproachability because of a dog-leg in the street it fronted made it undesirable for those purposes; that the streets surrounding the property were unpaved; that the building situated thereon was out of use and of little value; and that the fair market value of the property was not more than $2,500. This valuation was somewhat corroborated by defendants' witness, Blake, provided the property was to remain in R-4 zoning classification. Referring to the McMinn property, witness Blake stated, "But to go back to R-4, which is the question you asked me, it would have to be quite low, because in the first place anyone coming in here to buy this as a residential lot would look past the corner because of the traffic, industrial right across the street, they'd want to find one here more quiet, this would be an undesirable location for a home." The State's expert further corroborated his own testimony that the market value for this property was governed by residential use by showing the sale of some eight or nine other pieces of property in the immediate vicinity within a year of this action. Those sales were at prices usually well below the sum awarded the defendants for their lots.

Defendant McMinn and his witnesses testified that the area was run down and not very desirable for residential purposes; that there were industrially zoned areas immediately adjacent to this property but admitted that no industrial development had taken place inside the area zoned as R-4; that they believed the area would be rezoned in the near future; and that the fair market value of the property—if and when it were rezoned for industrial purposes —would be between $11,800 and $18,000.

The case was submitted to the jury on proper instructions that it could consider the highest and best use of the property and if it found there was a reasonable probability of a zoning ordinance change in the near future, it could take that into consideration in arriving at the fair market value. The jury's finding that the fair market value of the property was $4,500 clearly indicates it adopted the State's theory that the fair market value was governed by residential use and that no zoning change was imminent.

There is no evidence in the record to show that this property, located in an R-4 zone, could possibly have a greater fair market value for residential purposes than the sum awarded by the jury. The ruling of the court therefore, that the case should go back for a new trial because the amount fixed by the jury was too small, would mean that in the new trial the court could only submit the case to the jury on the basis of the higher industrial use which of course would assume that rezoning was so imminent as to be controlling in the market place.

In considering this evidence and the action of the trial judge it must be borne in mind that what is to be determined is the fair market value of this property, what a willing buyer would pay a willing seller as of the date of taking. Zoning ordinances, including the likelihood of change if a proper foundation is laid, are relevant. But "an important *caveat* to remember in applying the rule is that the property must not be evaluated as though the rezoning were already an accomplished fact. It must be evaluated under the restrictions of the existing zoning and consideration given to the impact upon market value of the likelihood of a change in zoning." 4 Nichols, Eminent Domain, § 12.322 (3rd ed., Supp.1960). As observed by the New Jersey Court in State by State Highway Com'r v. Gorga, 26 N.J. 113, 117, 138 A.2d 833, 835:

"No matter how probable an amendment may seem, an element of uncertainty remains and has its impact upon the selling price. At most a buyer would pay a premium for that probability in addition to what the property is worth under the restrictions of the existing ordinance."

One of the instructions given in this case which correctly states the law on this point in Arizona informed the jury of these controlling principles. The Court said:

"Compensation awarded when land is taken by eminent domain is the market value of the land for any use to which it is adapted and for which it is available. If, therefore, the land is not presently available for a particular use by reason of a zoning ordinance or other restrictions imposed by law, but if you find from the evidence that there was a reasonable probability of a change in the near future in the zoning ordinance, or other restrictions, then the effect of such probability on the minds of purchasers generally should be taken into consideration in fixing the present market value of it."

Under the circumstances of this case, the granting of a new trial goes far beyond these principles. In effect it would exclude from the jury's consideration any evidence of the existing zoning restrictions and compel a finding that buyers in the

open market would treat the change as an accomplished fact. Such a finding in this case would be contrary to a clear preponderance of the evidence.

An examination of the evidence, which we have already summarized, shows that no attempt whatever had been made to re-zone this property; that no property had been sold in the area before the date of the taking for a price that would indicate the buyers and sellers of property in that zone ever contemplated any change in the zoning ordinance. Although there was evidence that this property was not very desirable for residential purposes, this is not at all uncommon for properties on the fringe of a residential zone forming the buffer between industrial and residential zones. Such fringe devaluation has little weight in showing a possible zoning change, unless it is accompanied by a general invasion of the residential zone by nonconforming industrial uses. See, Real Properties, Inc. v. Board of Appeal, 319 Mass. 180, 65 N.E.2d 199, 168 A.L.R. 8; City of Euclid v. Lakeshore Co., 102 Ohio App. 96, 133 N. E.2d 372. There was no evidence of industrial development within this R-4 zone. There was nothing before the jury, except sheer speculation, upon which to base a finding that a change in the ordinance was imminent. The clear preponderance of the evidence supports the jury's refusal to speculate that the board of county supervisors, in the exercise of their discretion,

would alter the existing zoning classifications which govern this property. We therefore hold that the trial court abused its discretion in granting a new trial.

Reversed, with directions to vacate the motion for new trial and reinstate the judgment.

STRUCKMEYER, C. J., and PHELPS, BERNSTEIN and LESHER, JJ., concur.