[Civ. No. 7037. Fourth Dist. Feb. 28, 1963.]

MARY A. RINER, Individually and as Administratrix, etc., Plaintiff and Appellant, v. JULIUS A. PASKAN et al., Defendants and Respondents.

500

Tanner, Odell & Taft and Henry V. Cleary for Plaintiff and Appellant.

J. Bryant Kasey and Mary Ann Kasey, in pro. per., Scudder & Forde and Guy Richards Crump for Defendants and Respondents.

MONROE, J. pro tem.*—The plaintiff and appellant, appearing individually and as administratrix of the estate of her deceased husband, brought this action in the nature of a stockholders' derivative suit to establish that certain mining claims were subject to a trust in favor of California Silver Corporation, a corporation. In substance, plaintiff claimed that defendant Julius A. Paskan was president and director of the corporation and that defendant J. Bryant Kasey was employed by the corporation as superintendent; that said defendants, together with Mary Ann Kasey, conspired together to locate and transfer certain mining claims in San Bernardino County which in equity should have been the property of the corporation; and that they located and took said claims in their individual capacities. Plaintiff contended as a minority stockholder that the action of the defendants was a breach of their fiduciary relationship to the corporation; and that they used their skill and efforts, which should have been devoted to the business of the corporation, to the detriment of the corporation and its business by depriving it of the interest which it should have had in the mining claims. It developed at the trial that the mining claims in question were located in the name of Mr. and Mrs. Kasey and Dr. Paskan in March 1950,

*Assigned by Chairman of Judicial Council.

and that thereafter they sold the mining claims to Molybdenum Corporation for a substantial consideration. A judgment was rendered in favor of the defendants and plaintiff appeals.

The principal contention made by appellant is that the findings and judgment of the trial court are not supported by the evidence. It is contended in substance that there was evidence that Dr. Paskan was the president and was in charge of the corporation and that Kasey was employed by the corporation as manager or superintendent. It is contended that a part of the duties of Kasey was to locate mining claims and particularly claims which would produce ore suitable to be processed in a mill which had been erected by the corporation, and that in the course of such duties valuable claims producing ''rare earth'' were discovered but that defendants Kasey and Paskan conspired together to divert these claims from the corporation to their own interest. It is claimed that pursuant to said conspiracy they caused the claims to be taken out in their individual names and later sold them for a large sum of money, all to the detriment of the corporation and its stockholders and creditors.

As a result of the conflicting claims of the parties it has been necessary to carefully review the transcript of the evidence taken at the trial. Because of the fact that plaintiff was seeking at the trial to establish her claims largely by circumstantial evidence, the testimony covered a great many circumstances and happenings which are not material to a proper determination of this appeal. It is sufficient to say that there is irreconcilable conflict in the testimony. There was considerable evidence which tends to support the claims of plaintiff and appellant. On the other hand the testimony of defendants and particularly that of Dr. Paskan and Mr. Kasey, supports the finding and judgment of the trial court. We are therefore faced with the rule that the province of this court ''begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will uphold the disputed finding.'' (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].)

The plaintiff and appellant bases her claim upon the following well established principles: It is contended that an officer of a corporation occupies a position toward the corporation and its stockholders that is fiduciary in nature. (*Wulfjen* v. *Dolton*, 24 Cal.2d 878 [151 P.2d 840].) Such officer is required to use the highest of good faith and may not, in operat-

ing the business of the company, obtain an unfair advantage at the expense of the corporation. (*Remillard Brick Co.* v. *Remillard-Dandini Co.,* 109 Cal.App.2d 405 [241 P.2d 66].) He may not deprive the corporation of profit or advantage which his skill and ability might otherwise bring to it by diverting the profits thereof to his own use. (*New* v. *New,* 148 Cal.App.2d 372 [306 P.2d 987]; *Industrial Indem. Co.* v. *Golden State Co.,* 117 Cal.App.2d 519 [256 P.2d 677].) The rule is stated in 13 Cal.Jur.2d 92 as follows:

"Any secret profit obtained by a director by reason of a disregard of obligations incident to the fiduciary relation cannot be retained, but must be accounted for to the corporation."

In order to determine the sufficiency of the evidence to support the findings and judgment it is well first to consider the evidence with reference to the situation of Mr. and Mrs. Kasey. Although, as heretofore stated, there was considerable conflict in the testimony, there was evidence, apparently believed by the trial court, to establish the following:

Mr. Kasey was a mining engineer and metallurgist. The corporation was constructing a mill for the purpose of processing ore from certain claims which it controlled. About May 1, 1949, Kasey was employed to superintend the construction of that mill to completion. He discovered that the mill was poorly planned and that it was doubtful whether it could be so completed that it would have any substantial practical value. However, he remained in the employment until September 20, 1949, when he quit. He was not thereafter employed by the corporation. For a few weeks before he terminated his services the mill was operated in an attempt to process some ore taken from the corporation's claims and the results were unsatisfactory. After he quit, the company ceased all operations and conducted no further business. Dr. Paskan was then president of the corporation and employed Kasey temporarily in an attempt to locate some claims which would produce ore which could be profitably processed in the company's mill. This temporary employment was unproductive. The parties were seeking ore which would produce silver.

Later Kasey learned through a magazine article that there were indications of rare earth in the location known as Mountain Pass. He made an arrangement with Dr. Paskan and Mrs. Kasey by which they would advance the necessary

money and would procure the necessary equipment for prospecting and locating claims. Kasey was to do the necessary work and it was the arrangement that any claim located would belong to the three of them, each to own a one-third interest. Mrs. Kasey was operating a store in Bakersfield which was producing a separate income. This arrangement was carried out; both Mrs. Kasey and Dr. Paskan advanced money. Money advanced by Dr. Paskan was from his own personal funds and was not money of the corporation. The claims in question were located and filing was made in May 1950. Mr. Kasey testified that he was employed by the corporation solely for the purpose of superintending the completion of the construction of the mill and that his duties did not involve anything with regard to the location of claims.

Based upon the foregoing and other events, the court found that Mr. Kasey was employed by the corporation until September 20, 1949, and not thereafter. ▮▮ The general rule is stated in 11 Cal.Jur.2d 272 as follows:

"Unless something is done that would give rise to a cause of action without the conspiracy, there can be no successful civil action, since the conspiracy itself does not give rise to a cause of action, however atrocious its purpose."

It is true that one partner may maintain an action for conspiracy against his former partner and a third person who conspired together to do acts depriving the plaintiff of his interest in the business. (*Moropoulos* v. *C.H. & O.B. Fuller Co.*, 186 Cal. 679 [200 P. 601].) ▮ It is to be noted in the instant case, however, that the act which the two Kaseys and Paskan were seeking to accomplish was to find, locate, and file upon mining claims which would produce rare earth. There was nothing unlawful in the nature of the act to be done nor in the means to be used. No trust would arise in favor of the corporation or its stockholders or creditors unless the location of the claims involved a breach of a fiduciary relationship between respondents and the corporation. The evidence was undisputed that Mrs. Kasey never had any connection with the corporation and the court found that Kasey's connection had been severed several months before he undertook to locate the claims in question. The court's findings established, therefore, that there existed no fiduciary relation between the corporation and either of the Kaseys. It seems obvious, therefore, that even though there had been involved some breach of fiduciary duty on the part of Dr. Paskan, that fact would not subject the interest of the Kaseys to any

claims on behalf of the corporation. That is for the reason that it was not the object of any undertaking between the three parties to deprive the corporation of anything. The sole object was to locate and file on the claim. ■ In 15 C.J.S. 998, the rule is laid down as follows:

"To constitute a conspiracy the purpose to be effected by it must be unlawful in its nature or in the means to be employed for its accomplishment, and, where the object in view is lawful and no unlawful means are used, there can be no civil action for conspiracy, even though damage results and even though defendants acted with malicious motives."

To the same effect, see *Sweeley* v. *Gordon,* 47 Cal.App.2d 381 [118 P.2d 14], and *Agnew* v. *Parks,* 172 Cal.App.2d 756 [343 P.2d 118]. An interesting case in this connection is *Dalury* v. *Rezinas,* 183 App.Div. 456 [170 N.Y.S. 1045]. It was there held that an alleged conspiracy between a copartner and others which deprived plaintiff of his interest in the partnership was not actionable where all the proceedings were legal remedies pursued in a legal way, by parties entitled thereto.

■ An examination of the evidence relative to the situation of Dr. Paskan completely disposes of any contention relative to conspiracy. Dr. Paskan testified that he became a stockholder in the corporation as a result of misrepresentations made to him. He stated that he was induced to advance the money with which the mill was to be constructed and he relied upon the other parties involved to see that it was properly constructed. After the employment of Kasey he learned that the mill was not properly designed and was from a practical standpoint of little, if any, value. He then ascertained that the mining claims upon which the company was purportedly relying did not produce ore of sufficient value to justify further production. The corporation was a Nevada corporation that had never been authorized to do business in California. About the first of September 1949, the construction of the mill was sufficiently advanced that some ore could be processed, and this was done, with unsatisfactory results. At the time Kasey quit, the business of the corporation shut down and was never resumed. The corporation had many debts which were unpaid. Its interest in the mining claims was lost. Mr. Kasey was not again employed on behalf of the company but Dr. Paskan undertook to advance part of the money and to secure certain equipment in order that

Kasey might search for and locate claims producing rare earth. This arrangement was an individual one and the money paid was from Dr. Paskan's own personal funds. Kasey did no further work for the corporation. For some time Dr. Paskan looked after the mill property and at his own expense kept a watchman on the property to protect it for the benefit of everyone concerned. He turned over to Kasey certain equipment, a part of which had been owned by the corporation. Part of it had been contracted for by the corporation but not paid for, and Dr. Paskan had paid for it himself. As a part of the judgment the trial court determined the amount owed to Dr. Paskan by the corporation and gave a credit on that amount for the value of the use of the equipment which the corporation owned.

From the foregoing, it becomes apparent that nothing was done by Dr. Paskan which tended in the slightest to interfere with any business of the corporation. The corporation was not conducting any business; its charter had been forfeited; it was, in fact, entirely defunct. Under such circumstances, any fiduciary duty in relation to its business projects had terminated and there was no rule either of law or morals preventing defendant Paskan from making an individual investment.

In disposing of this feature of the case, the trial court summed up the situation in the following language:

"The theory upon which this action is predicated is that the defendants engaged

(a) in a *competing* business

(b) to the detriment of

(c) a solvent corporation

(d) engaged in a *going* business.

"The evidence falls far short of supporting any one of these postulates.

"On the contrary, the evidence disproves each of them.

"The company was insolvent;

"The company was not conducting a going or any business.

"The defendants were not engaged in any competing business.

"The defendants' operations did not nor could they be detrimental in any way to the California Silver Company."

The findings of the trial court to the effect that the mining claims in question were owned by Dr. Paskan and the two

Kaseys, that the acquisition of the claims involved no breach of any duty to the corporation, and that the proceeds of the sale of the claims were not subject to any trust on behalf of the corporation or its stockholders or creditors is amply supported by substantial testimony. Some other questions were raised upon the appeal but the appellant admitted and stipulated in her brief before this court that in case the portion of the judgment referred to be affirmed, the other questions automatically become moot. We agree with this statement.

The portions of the judgment appealed from are affirmed.

Griffin, P. J., and Coughlin, J., concurred.