453 P.2d 229

Jack L. UVODICH and Edna B. Uvodich, husband and wife, and the Unknown Heirs of any Deceased Defendant, Appellants,

v.

ARIZONA BOARD OF REGENTS, a body corporate, and the City of Tucson, an Arizona municipal corporation, Appellees.

No. 2 CA–CIV 559.

Court of Appeals of Arizona.

April 10, 1969.

Rehearing Denied May 29, 1969.

Review Denied Sept. 16, 1969.

May, Dees & Newell, by Louis W. Barassi, Willis R. Dees, Tucson, for appellants.

Gary K. Nelson, Atty. Gen., Stanley Z. Goodfarb, Special Asst. Atty. Gen., Phoenix, Dino DeConcini, City Atty., J. Dan O'Neill, Asst. City Atty., Tucson, for appellees.

HATHAWAY, Judge.

A summary of the proceedings in the trial court which culminated in the judgment from which this appeal is taken is as follows. The Arizona Board of Regents instituted a condemnation action to acquire a parcel of realty located at the corner of

Hawthorne Street and Martin Avenue in Tucson, owned by Mr. and Mrs. Uvodich. The defendants filed a counterclaim in four counts. The plaintiff moved to dismiss the counterclaim and the motion was granted with leave to amend the counterclaim and to join the City of Tucson as a party defendant. The defendants filed an amended counterclaim against the Board and a cross-claim against the City of Tucson. Both the Board and City moved to dismiss the counterclaim on the ground that it failed to state a claim for relief. After submission of memoranda and argument thereon, the trial court granted the motion to dismiss and the formal judgment duly entered thereon recited:

"At said hearing, this court, having heard argument and reviewing the file, and all pleadings and matters contained therein, ordered the granting of the motions to dismiss * * *."[1]

The defendants now contend that their counterclaim stated a claim for relief, hence the motion to dismiss was erroneously granted. However, in view of the fact that matters outside the counterclaim were presented to and considered by the trial court, as evidenced by the recitation in the judgment set forth above, the motion was treated and disposed of as one for summary judgment. Our review therefore is predicated on the same record. We shall consider each of the counts set forth in the counterclaim seriatim.

## COUNT ONE

Count 1 in substance alleged that the Board, in conjunction with the City and in furtherance of the expansion of the University of Arizona, vacated and closed Hawthorne Street from Warren to Martin Avenues, and North Warren Avenue between Hawthorne and East Second Streets, which for many years prior thereto had been public thoroughfares; that these

1. This judgment has the requisite "finality" for appeal purposes in that the trial court, in accordance with Rule 54(b), Arizona Rules of Civil Procedure, as amended, expressly determined that there was no cause for delay and directed entry of judgment.

streets were a "direct and easy means of ingress and egress" to their property and the business conducted thereon; that the closing of these streets had "materially and drastically interfered with ingress and egress" to and from their property by their customers and had destroyed the "ease of ingress and egress and general access" to their property; and that they had been permanently deprived of substantial and essential means of ingress and egress. At the time of the hearing on the motion to dismiss, the defendants were permitted to amend the amended counterclaim to allege that the Board and the City had vacated and closed other nearby streets. The parties stipulated that, at all times material, access could be had to the defendants' property "by a traveler on Hawthorne entering Martin or by a traveler on Third Street entering Martin." Appended to the Board's motion to dismiss was an affidavit of coun-sel, which remains uncontroverted in the record, stating:

"That on or about the date of filing of the summons and complaint in the above-entitled action and presently, the only street physically closed in the immediate vicinity of the defendants' property was Hawthorne Street from the west curb line of Martin to the east curb line of Warren Avenue.

"That Warren Avenue was at that time and is presently physically open from Fifth Street to Speedway.

"That Martin Avenue on the date of the filing of the complaint was and is presently physically open from Speedway to Sixth Street."

Examination of the diagram below indicates that there was no closure of the streets on which the subject property

abutted. As to these streets, the defendants had an easement of ingress and egress to and from the property which constituted a property right compensable by the state when destroyed or substantially impaired. State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960); State ex rel. Herman v. Jacobs, 7 Ariz.App. 396, 440 P.2d 32 (1968). There being no destructon or impairment of access to the abutting streets, the trial court ruled as a matter of law that any closures or temporary blockage of other streets or other places did not give the defendants a claim for damages. This question was one for the court's determination. City of Phoenix v. Wade, 5 Ariz.App. 505, 428 P.2d 450 (1967).

The appellant relies on language in Reese v. De Mund, 74 Ariz. 140, 245 P.2d 284 (1952) to the effect that the extent of a grantee's private right of user in streets and alleys shown on a plat, to which by reference his conveyance was made, is limited to such streets and alleys as are reasonably and materially beneficial to him and of which the deprivation would reduce the value of his lot. (74 Ariz. 142, 245 P.2d 284.) In Reese, the complaint alleged that the plaintiff had suffered special damage by reason of the vacation of an alley in that the sewer line which served their property, together with their gas and utility line, was located in the alley being abandoned and also that their property was being depreciated in value because of the closing of the alley. Although this original opinion held that a claim for relief had been stated, on rehearing it was reversed and our Supreme Court affirmed the trial court's dismissal of the complaint. Reese v. De Mund, 75 Ariz. 66, 251 P.2d 887 (1952). The court stated:

> "These damages, as appear from the complaint, are not different in either degree or kind from those suffered by the public, generally, and can constitute no basis for the cause of action claimed." 75 Ariz. 67, 251 P.2d 887.

It may be stated as a general rule that one whose property does not abut on the closed street ordinarily has no right to compensation for the closing or vacation of the street if he still has reasonable access to the general system of streets. See Annot., 49 A.L.R. 330; Annot., 93 A.L.R. 639. A decrease in the value of his property because of diversion of traffic away from it affords no basis for compensation. Rayburn v. State, 93 Ariz. 54, 378 P.2d 496 (1963); Rutledge v. State, 100 Ariz. 174, 412 P.2d 467 (1966); Kansas City v. Berkshire Lumber Company, 393 S.W.2d 470 (Mo.1965); Wolf v. Commonwealth, 422 Pa. 34, 220 A.2d 868 (1966); People ex rel. Department of Public Works v. Symons, 54 Cal.2d 855, 9 Cal.Rptr. 363, 357 P.2d 451 (1960). Here, the closure of Hawthorne Street between Martin and Warren Avenues constituted merely a deprivation of one means of access to the general system of streets. The defendants still had reasonable access to the street system and the only damage they sustained did not differ in kind, although it might have in degree, from that suffered by the public in general, i. e., mere circuity of travel. Under these circumstances, notwithstanding they were damaged by the closing of the street, the trial court properly ruled that such damages were merely *damnum absque injuria*. Gayton v. Department of Highways, 149 Colo. 72, 367 P.2d 899 (1962); Archenhold Automobile Supply Company v. City of Waco, 396 S.W.2d 111 (Tex.1965); People v. Symons, supra.

## COUNT TWO

Count 2 realleged the allegations set forth in Count 1 as to the closing of the designated streets and further alleged that:

> "* * * the City of Tucson joined with the plaintiff in furtherance of said expansion program and did close said streets and alleys in consideration of and relying upon the express promise and agreement of the plaintiff, through its duly authorized offices, to accept the responsibility for injury to the defendants Uvodich, from any damage or harm by

reason of closing of said streets and the agreed appropriation thereof."

In opposition to the motion to dismiss, the defendants submitted a memorandum of law and appended thereto an exhibit (Exhibit 1) to support their position that "there was a direct binding and enforceable contractual obligation on the part of the Board of Regents inuring to the benefit of the said defendants and in the other persons injured by the vacation of the streets in question." Construing the allegations of Count 2 most favorably to the defendants, it would appear that they were attempting to assert a third party beneficiary claim against the Board of Regents by virtue of its covenant in the quitclaim deed from the City [part of Exhibit 1] which recited:

"The grantee, the Board of Regents of the universities and state college of Arizona, in consideration of the transfer of the above described portions of streets and alleys, *covenants to hold harmless* the City of Tucson, a municipal corporation, *from any damages awarded by a court of competent jurisdiction* against the City of Tucson as the result of any action or cause of action brought by any owner or owners of real property in the City of Tucson claiming damages as a proximate result of the adoption of ordinance No. 2895 vacating the above described portions of streets and alley." (Emphasis added)

■ It is apparent that the Board did not undertake to indemnify the City of Tucson for *any* damages sustained by property owners as a result of the vacation of the subject streets. It agreed to indemnify the City only for "damages awarded by a court of competent jurisdiction." As a consequence thereof, the adverse ruling on Count 1 of the counterclaim caused the claim alleged in Count 2 to fail.

## COUNTS THREE AND FOUR

In their opening brief, the defendants contend that Count 3 alleges deliberate and unlawful joint and concerted acts on the part of the Board and the City, constituting civil conspiracy. They claim that Count 4 sets forth an actionable claim for relief "sounding in tort for abuse of legal process." The tenor of their argument in their reply brief appears to be that Counts 3 and 4 state a claim for relief because the depreciation in value of their property was caused by acts of the condemning authority.

The substance of the allegations of Counts 3 and 4 is that in 1960 the University of Arizona announced a planned expansion through some thirteen residential blocks within the next ten years according to a map released simultaneously therewith; that pursuant to this program, the Board systematically and progressively acquired property in the area either by purchase or by exercise of its power of eminent domain; that after such acquisition, the Board destroyed the residences thereon and created parking lots and sites for the University buildings; and that as a consequence of this program the defendants' property was depreciated in value.

■ As to the defendants' "conspiracy" argument, we need only say that even assuming concerted action on the part of the Board and the City had been alleged, one requisite of an actionable conspiracy was missing—an unlawful purpose or an unlawful means to accomplish such purpose. See 15A C.J.S. Conspiracy § 3; Riner v. Paskan, 213 Cal.App.2d 499, 28 Cal.Rptr. 846 (1963).

As to the defendants' "depreciation in value" argument, they have cited no authority which permits recovery for same in inverse eminent domain. Art. 2, § 17, of the Arizona Constitution, A.R.S. provides that no private property shall be taken or damaged for public use without just compensation having first been made or paid into court. However, as pointed out by one treatise:

" * * * [T]he addition to the state constitution of a cause requiring payment for 'damage' as well as for 'taking' by no means opens the gate to a claim by a property owner for indemnity for all the

many injuries that he or his property may suffer by virtue of an act of government. 'Damages' are interpreted by the courts in a highly artificial way to mean 'damages in a constitutional sense.'"

1 Orgel on Valuation under Eminent Domain (2d ed.) § 6, pp. 37–39.

■ ▆ Here we have no physical invasion of the defendants' property. In Rutledge v. State, supra, our Supreme Court pointed out that, under such circumstances, damage incurred by a property owner as an incident of the construction of a public improvement is not "damage" within the purview of Art. 2, § 17. This view is in accord with the general rule in this country. Jahr, Eminent Domain § 51.

The acts complained of by the defendants consisted of those in furtherance of the Board's expansion program—announcement of its plans, acquisition of neighboring properties in accordance therewith and devotion of such acquired properties to a public use. We do not dispute that such acts may result in economic loss to a property owner. A public announcement of a planned project may result in tenants moving out, see e. g., Foster v. City of Detroit, 254 F. Supp. 655 (E.D.Mich.1966), land may become unsalable, see e. g., Eckhoff v. Forest Preserve District, 377 Ill. 208, 36 N.E. 2d 245 (1941), maintenance of land and buildings may cease, Foster v. City of Detroit, supra, ordinances preventing new construction may be passed. See e. g., Hunter v. Adams, 180 Cal.App.2d 511, 4 Cal.Rptr. 776 (1960) and police protection may cease, thereby encouraging vandalism, see e. g., In re Elmwood Park Project Section 1, Group B, 376 Mich. 311, 136 N.W.2d 896 (1965). Furthermore, when property is condemned in a piecemeal fashion, the condemning authority itself may help to prematurely blight the area and an owner whose lot is one of the last acquired is forced to absorb the declining market value which usually accompanies piecemeal condemnation. See, City of Cleveland v. Carcione, 118 Ohio App. 525, 190 N.E.2d 52, 5 A.L.R. 3d 891 (1963).

▆ In a recent law review article, "Damages Arising Through Instituting, Litigating, or Abandoning Eminent Domain Proceedings," 1967 Utah Law Review 548, the author points out that it is conceivable that the rationale of inverse eminent domain, through its embodiment in a "damage" provision as in our constitution, could be used to compensate losses caused by instituting, litigating, or abandoning condemnation proceedings. The author notes that, since as much or more actual damage often arises through the process of condemnation, the situation should be no different than where compensable damage is allowed. However, the doctrine of *damnum absque injuria* still is applied and decrease in value caused by the condemnation process is afforded no legal remedy. 6 Nichols, Eminent Domain (3d ed., revised 1965) § 26.45; 11 McQuillin, Municipal Corporations § 32.-38. The rationale for denying compensation for such decrease in value has been that compensation is required only for the property taken and not for the owner's losses, see e. g., Monongahela Navigation Company v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1893) or that the damage caused by the imminence of condemnation is merely one of the costs of ownership. See Smith v. Erie Railroad Company, 134 Ohio St. 135, 16 N.E.2d 310 (1938). We hold, therefore, that Counts 3 and 4, being merely *damnum absque injuria*, failed to state a claim and the trial court did not err in dismissing them.

In so holding, however, we do not suggest that the defendants are foreclosed from showing this claimed depreciation in value in the condemnation proceedings. Our Supreme Court has held that property cannot be charged with a lesser value at the time of taking when the decrease in value is occasioned by reason of the taking itself. State v. Hollis, 93 Ariz. 200, 206, 379 P.2d 750 (1963). Admission of evidence of the value the property would have had if the public improvement had not been contem-

**406**

plated was endorsed in *Hollis*, supra. A.R. S. § 12–1123 provides:

"A. For the purpose of assessing compensation and damages, the right thereto shall be deemed to accrue at the date of the summons, and its actual value at that date shall be the measure of compensation and damages."

Other jurisdictions which have had occasion to consider the question of depreciated value resulting from a general plan of condemnation do not permit depreciation in value caused by the condemnor to inure to its benefit. In re Elmwood Park Project Section 1, Group B, supra; Foster v. City of Detroit, supra; Lower Nueces River Water Supply District v. Collins, 357 S.W. 2d 449 (Tex.Civ.App.1962) (dictum); State Through Department of Highways v. Clarke, 135 So.2d 329 (La.App.1961); Buena Park School District of Orange County v. Metrim Corporation, 176 Cal.App.2d 255, 1 Cal.Rptr. 250 (1959); City of Cincinnati v. Mandel, 9 Ohio Misc. 235, 224 N.E.2d 179 (1966); City of Cleveland v. Carcione, supra; Sayre v. United States, 282 F.Supp. 175 (N.D. Ohio 1967); State Road Department v. Chicone, Fla., 158 So.2d 753 (1963). It is stated in Lewis on Eminent Domain, Vol. 2 (3d ed.) 1329:

"* * * if the proposed improvement had depreciated the value of the property, it would be very unjust that the condemning party should get it at its depreciated value; and the correct rule would seem to be that the value should be estimated irrespective of any effect produced by the proposed work * * *."

■ Art. 2, § 17 of the Arizona Constitution mandates the payment of "just compensation." This term has been de-fined:

"* * * valuing property in such a way as not to diminish or depreciate its value because of steps taken by the public authority in carrying out a plan." City of Cincinnati v. Mandel, 224 N.E.2d 180.

■ State v. Hollis, supra, recognizes that arbitrary application of A.R.S. § 12–

1123, supra, is not required where application of the statute would result in unjust compensation to the property owner. The logical conclusion, therefore, is that the time as of which the evaluation of the property should be made must comport with the peculiar facts and circumstances of the case so as to assure the property owner compensation which is just, as contemplated by the Arizona Constitution.

For the reasons herein stated, the judgment is affirmed.

MOLLOY, C. J., and NORMAN S. FENTON, Superior Court Judge, concur. NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge NORMAN S. FENTON was called to sit in his stead and participate in the determination of this decision.