868 P.2d 971

**TOWN OF PARADISE VALLEY, Plaintiff–Appellant,**

v.

**YOUNG FINANCIAL SERVICES, INC., and Bernard Young, Defendants–Appellees.**

**No. 1 CA–CV 91–328.**

Court of Appeals of Arizona, Division 1, Department A.

July 20, 1993.
Review Denied March 16, 1994.

Fennemore Craig by Kenneth J. Scherk, Kaye L. McCarthy, Phoenix, for plaintiff-appellant.

Burch & Cracchiolo, P.A. by Andrew Abraham, Paul F. Dowdell, Jack D. Klausner, Phoenix, for defendants-appellees.

## OPINION

EHRLICH, Presiding Judge.

The Town of Paradise Valley, Arizona ("Town"), appeals from a jury condemnation compensation award to Young Financial Services, Inc., and Bernard Young ("Young"). For the following reasons, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

When the Town was incorporated in 1961, all property within its boundaries was zoned residential, although non-conforming uses already present were legitimized and protected under a "grandfather clause" and the Town's zoning code did allow a few other uses such as government buildings, churches, schools, resorts and medical clinics. However, the code required that a special use permit be obtained from the Town Council for any zoning change which is non-residential or not protected by the grandfather clause. This is true even when the Town itself is the proponent of the nonresidential use, unlike the zoning regulations pertaining to most governmental entities. The Town Council does not approve zoning change requests unless it believes that there is a need for the change and that the change will be beneficial; even the issuance of special permits to the Town for its construction projects is not a foregone conclusion.

Young owned a vacant piece of land adjacent to the Town's municipal complex. The Town owned the property to the west, south and east of Young's land, part of which was being used for a municipal complex, a parking lot, a construction/storage yard, a helicopter pad and a police station. There also was a heating and air conditioning service company and a recording studio immediately southwest of the property, a water company to the southeast and two schools nearby.

The Town filed a complaint in condemnation of Young's 0.888 acre for the expansion of the municipal complex; it took possession of the property through a stipulated judgment. During a jury trial to determine the value of the property at the time of the condemnation suit, October 24, 1989, Young sought to show that, although the property was zoned for residential use, it was adaptable to certain nonresidential uses. Accordingly, he introduced evidence that it was reasonably probable that, within the reasonably foreseeable future, he could obtain the requisite special use permit from the Town Council allowing him to use the property for nonresidential development, which would be its highest and best use for valuation purposes.

The Town in turn sought to limit the evidence to that of residential use. It filed a motion in limine to suppress all evidence regarding nonresidential development, arguing that Young would not be able to show that such development was reasonably probable. The trial court declined to rule on the motion until after it had heard the proof and was better able to decide whether there was sufficient evidence for the case to go to the jury.

Young testified that residential use of the property would be "absolutely the bottom" of his list of alternative uses for it. His experts and the Town's appraiser testified that the highest and best use of the property was nonresidential. The Town's manager agreed that the property was a "not particularly" good piece of property for residential development. He also admitted that the Town itself had no intention of retaining the property for residential use, believing that it was reasonably probable that the Town Council would grant it a special use permit for an expansion of the municipal complex.

The Town's appraiser testified as to the value of the property based upon the sale of comparable residential lots. Young's experts testified to a much higher range of values based on nonresidential use, although they discounted their figures to account for the fact that rezoning with a special use permit had not occurred and was simply a reasonable probability.

When the Town renewed its motion to suppress the evidence of nonresidential development, the court denied the motion, deciding that a jury question had been presented. Among the instructions then given to the jury was the following:

If the land being taken was not, on October 24, 1989, available for a particular use because of the existing zoning, but a preponderance of the evidence demonstrates there was a reasonable probability that the zoning might be changed in the near future to permit a different use, then in determining the fair market value you may take into consideration the effect the probability in change of zoning might have on the minds of potential purchasers.

The Town's counsel expressed no disapproval of the instruction and requested no limiting instructions. The jury awarded Young compensation of $256,802, an amount within the range to which the experts had testified, and the Town timely appealed.

### DISCUSSION

■ The Town argues that the trial court erred in allowing the jury to consider anything but residential use in valuing Young's property because the zoning of the property at the time of the taking permitted only residential use. All of its arguments are tied to this central contention.

■ The parties agree about the legal principles governing what is admissible when a party seeks to admit evidence that property should be valued as to other uses for which it was not zoned at the time of the taking. The general rule is that present market value must be determined only by uses for which the land is adaptable and available. *Gear v. City of Phoenix*, 93 Ariz. 260, 263, 379 P.2d 972, 974 (1963); *State v. McMinn*, 88 Ariz. 261, 263–65, 355 P.2d 900, 902–04 (1960). An exception to the general rule exists when land sought to be condemned is not presently available for a particular use by reason of a zoning ordinance or other legal restriction but the evidence tends to show a "reasonable probability" of a change in the near future. *McMinn*, 88 Ariz. at 263, 355 P.2d at 903; *Flood Control District of Maricopa County v. Hing*, 147 Ariz. 292, 299, 709 P.2d 1351, 1358 (App. 1985). In such a case, the effect of the probability on the minds of purchasers generally may be taken into consideration in fixing the present market value, *McMinn*, 88 Ariz. at 264, 355 P.2d at 903; *State v. Jay*

*Six Cattle Company*, 88 Ariz. 97, 109–10, 353 P.2d 185, 193–94 (1960); *Hing*, 147 Ariz. at 299, 709 P.2d at 1358, but there must be evidence of "reasonable probability" as distinguished from "possibility" and "speculation" in order for the exception to apply. *McMinn*, 88 Ariz. at 265, 355 P.2d at 903–04; *Jay Six Cattle Company*, 88 Ariz. at 110, 353 P.2d at 193–94.

■ An important limitation on the rezoning exception is the "project influence doctrine." This principle excludes all references to the probability of changes in value which occur because of a proposed project of the condemning authority. *See State v. Hollis*, 93 Ariz. 200, 206, 379 P.2d 750, 753 (1963); *Uvodich v. Arizona Board of Regents*, 9 Ariz. App. 400, 405–06, 453 P.2d 229, 234 (1969). In *Kansas City Power & Light Co. v. Jenkins*, 648 S.W.2d 555, 560 (Mo.App.1983), the court stated:

> Zoning generally falls within the project influence doctrine. "The probability of rezoning (or even an actual change in zoning) which results from the fact that the project which is the basis for the taking was impending, cannot be taken into account in valuing the property in the condemnation proceeding [emphasis deleted]." 4 Nichols, Eminent Domain § 12.322[1] at 12–655 (3rd ed. 1981).

■ The rule thus neutralizes the effect of the project for which the property was condemned. The condemnee neither gets the benefit of increased valuation nor is left with decreased valuation due to the condemnation project. *Id.*

Although not referring to the "project influence doctrine" by that name, the Arizona Supreme Court approved the doctrine in *Hollis*, 93 Ariz. at 206, 379 P.2d at 753, in which it stated:

> It is competent to show the value of property as it would have been if no such [project] had been contemplated. In other words, the property cannot be charged with a lesser value at the time of taking when the decrease in such value is occasioned by reason of the taking itself. [Citations omitted.]

*See Uvodich,* 9 Ariz.App. at 405–06, 453 P.2d at 234, citing *Hollis, id.* The critical distinction is whether the evidence is of rezoning for the condemnation project or whether it is unrelated to the condemnation project. As the court stated in *Jenkins:*

> [I]f the rezoning of [the property owner's] land resulted from the project itself, evidence of it was incompetent and inadmissible. If the rezoning was not the result of the project, however, it was admissible as relevant to [a] determination of the best and highest use of the property.

648 S.W.2d at 560.

The Colorado Supreme Court noted this distinction in *Williams v. City and County of Denver,* 147 Colo. 195, 363 P.2d 171, 175 (1961):

> It may be that under some circumstances evidence of a probable change in zoning may be admitted where such change is unrelated to the acquisition of the subject property. However where the change in zoning results from the taking of the subject property, as is the case here, it is not admissible. . . .

*See also State v. Templeman,* 39 Wash.App. 218, 693 P.2d 125, 127 (1984); *Masheter v. Kebe,* 34 Ohio App.2d 32, 295 N.E.2d 429, 431 (1973); *People v. Arthofer,* 245 Cal.App.2d 454, 54 Cal.Rptr. 878, 883–85 (1966).

The Town argues that the project influence doctrine required the trial court to exclude or strike evidence of the reasonable probability of it obtaining a special use permit to expand the municipal complex. It asserts that the testimony of Young's experts was based on this improper and prejudicial evidence and therefore should have been excluded or stricken.

The fallacy in the Town's argument, however, is that Young was not claiming the benefit of the special use permit the Town would probably obtain for its condemnation project, which is what the project influence doctrine addresses. Instead, Young sought to prove that if it was reasonably probable that the Town would be able to obtain a special use permit for this property, it was reasonably probable that he would have received a special use permit because the

Town's zoning code makes it as difficult for the Town to receive a permit as for any other applicant. We find that the trial court correctly concluded that this was a reasonable inference for the jury to consider.

■ Additionally, any possible misapprehension could have been corrected by a limiting instruction requiring the jury to disregard any effect on zoning caused by the project for which the property was being acquired. *See State v. Kruger,* 77 Wash.2d 105, 459 P.2d 648, 650 (1969); *State v. Sherrill,* 13 Wash.App. 250, 534 P.2d 598, 605 (1975). The Town did not request such an instruction and therefore cannot claim error. *E.g., Selaster v. Simmons,* 39 Ariz. 432, 437, 7 P.2d 258, 260 (1932) (party cannot complain about failure to define phrases if instruction with definition not requested); *Campbell v. Westdahl,* 148 Ariz. 432, 437, 715 P.2d 288, 293 (App.1985) (cannot claim error for failure to give instruction never requested).

■ The Town also argues that in denying the motions it made to preclude and strike evidence of Young's chances of obtaining a special use permit, the trial court improperly allowed the jury to "speculate" on this issue. The record shows that the Town failed to point out the specific instances in which the evidence was too speculative. Had it made specific objections, the trial court might have stricken particular testimony. Instead, the Town's position in its motions was that all of the evidence on this issue was too speculative.

■ It is the trial court's responsibility to make a preliminary determination that there is sufficient evidence to establish a reasonable probability of rezoning so as to permit expert opinions of value based upon that probability. *Lombard Park District v. Chicago Title and Trust Co.,* 103 Ill.App.2d 1, 242 N.E.2d 440, 445 (1968). An issue should be taken from the jury, though, only "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

We find that the trial court did not err in its determination that there was sufficient evidence for a jury to find a reasonable probability from the totality of the evidence that Young would have been able to obtain a special use permit.

▮ Again, if the Town felt that the jury would not fully appreciate that the standard of "reasonable probability" does not encompass evidence of mere possibility, it could have requested a more complete instruction, which it failed to do. *E.g., Campbell*, 148 Ariz. at 437, 715 P.2d at 293. For example, in *Jay Six Cattle Company*, 88 Ariz. at 110, 353 P.2d at 193–94, the court instructed the jury not only that it could consider another use for the property if it was reasonably probable within the foreseeable future but also gave an instruction explaining that "[e]lements affecting value ... which depend upon the events or come by facts of occurrences which fall within the realm of possibility are not fairly shown to be reasonably probable and should be excluded."

## CONCLUSION

Based upon the foregoing, the judgment is affirmed.

KLEINSCHMIDT and CONTRERAS, JJ., concur.