52 P.3d 213

**DUWA, INC., Plaintiff–Appellant,**

v.

**CITY OF TEMPE, Defendant–Appellee.**

No. 1 CA–CV 01–0598.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 22, 2002.

Review Denied Jan. 7, 2003.*

Jennings, Strouss & Salmon, P.L.C. By Douglas G. Zimmerman and John P. Robertson, II, Phoenix, Attorneys for Plaintiff–Appellant.

C. Brad Woodford, Tempe City Attorney By Clifford L. Mattice, Assistant City Attorney, Tempe, Attorneys for Defendant–Appellee.

OPINION

THOMPSON, Judge.

¶ 1 DUWA, Inc. (DUWA) appeals from the summary judgment in favor of the City of Tempe (Tempe) in DUWA's inverse condemnation action, as well as from the denial of its motion for new trial. For the reasons discussed, we affirm.

---

\* Chief Justice Jones recused himself and did not participate in the determination of this matter.

Justice Ryan did not participate in the determination of this matter.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 DUWA owned a bowling alley on Apache Boulevard in Tempe. In the late eighties and early nineties, the area along Apache Boulevard began to deteriorate and experience an increase in crime. On May 9, 1996, in response to complaints from business owners in the area, Tempe designated the Apache Boulevard Redevelopment Area, including the area surrounding DUWA's property, as an urban redevelopment "study area."

¶ 3 DUWA contends that beginning in February 1996, both the mayor of Tempe and the head of Tempe's Redevelopment Department indicated to DUWA's principal stockholder, vice president and manager of operations, Christine Zahn, that there would not be a place on the redeveloped Apache Boulevard for a bowling alley, that Tempe would likely acquire DUWA's property in a couple of years, and that DUWA should therefore forgo investment in a new bowling program called Cosmic Bowling unless it could recoup its investment in a couple of years because that program would only add value to the business, not to the land or the building. DUWA claims that as a result of these representations, it canceled all plans for extensive renovation, and that in the late spring of 1997, Zahn informed DUWA's bowling leagues that she could not guarantee them a complete 36-week bowling season because of Tempe's representations regarding the prospective condemnation of the property. DUWA asserts that the bowling leagues chose not to renew their contracts out of concern they would be left "homeless" in mid-season. Accordingly, DUWA lost a substantial amount of its business, and was unable to make its mortgage payments. DUWA lost its property to the lender through foreclosure proceedings on November 3, 1999.

¶ 4 DUWA initially filed its claim for inverse condemnation as an adversary proceeding in the United States Bankruptcy Court (Case No. 98–03612–PHX–SSC, Contested Matter 98–642) on September 10, 1998. On March 19, 1999, the Bankruptcy Court entered an order stating it would abstain from this matter and dismissing DUWA's adversary complaint without prejudice.

¶ 5 DUWA then filed its complaint for inverse condemnation against Tempe in Maricopa County Superior Court on March 26, 1999, and filed an amended complaint in April 1999.[1] The only cause of action asserted by DUWA is one for inverse condemnation, and DUWA pleads that it "suffered a complete taking of its property on or about December 31, 1998 when [it] was forced to close its business operations." DUWA sought its equity interest in the property (i.e., the difference between the fair market value of the property on the date the property was lost through foreclosure sale and the outstanding loan balance that was due prior to the loss of DUWA's rental income), its interest in the furniture, fixtures and equipment (FF & E) at the bowling center, its interest in its liquor license, relocation benefits, an additional 30% of the fair market value,[2] and its costs and attorneys' fees.

¶ 6 Tempe moved to dismiss the complaint, asserting (i) the complaint failed to state a valid claim for inverse condemnation because the designation of a redevelopment area was not a constitutional taking; (ii) Tempe was entitled to absolute immunity for its legislative decision to designate a redevelopment area; and (iii) the complaint was barred by the one year statute of limitations applicable to claims against public entities, Arizona Revised Statutes (A.R.S.) § 12–821, as well as by DUWA's failure to timely file a notice of claim pursuant to A.R.S. § 12–821.01. The Honorable M. Jean Hoag denied Tempe's motion to dismiss.

¶ 7 Tempe filed its answer to the amended complaint, denying the pertinent allegations and asserting a variety of affirmative defenses. Tempe subsequently moved for sum-

---

1. DUWA also sued its lender, TMS Mortgage, Inc. (dba The Money Store), but subsequently dismissed it from the case.

2. DUWA contended that the principals of the Tempe redevelopment represented that this amount would be available as an additional incentive to cooperate with Tempe on the redevelopment.

mary judgment, again asserting that DUWA's claims were time-barred, that Tempe was entitled to absolute immunity, and that there was no valid claim for inverse condemnation because Tempe had not asserted any physical control over DUWA's property. DUWA responded that a valid claim for inverse condemnation existed and a constitutional taking had occurred because Tempe's specific actions had targeted DUWA's property.

¶ 8 After briefing and oral argument, the Honorable Terry Pillinger granted Tempe's motion for summary judgment. Judge Pillinger concluded that there was no taking of DUWA's property under Arizona law because Tempe neither physically invaded DUWA's property nor substantially interfered with its ingress or egress.[3] The court was not persuaded by a California case relied upon by DUWA, *Klopping v. City of Whittier*, 8 Cal.3d 39, 104 Cal.Rptr. 1, 500 P.2d 1345 (1972), that allowed an inverse condemnation claim arising out of pre-condemnation announcements by a public entity that reduced property values. The court found that *Klopping* was based upon a California statute which had no Arizona counterpart, and also indicated that the holding of *Klopping* was not representative of Arizona law. The court entered judgment for Tempe.

¶ 9 DUWA filed a motion for new trial, which the court denied. DUWA then timely filed its notice of appeal from the judgment and the order denying its motion for new trial. We have jurisdiction over this case pursuant to A.R.S. § 12–2101(B) and (F)(1).

### ISSUE

Did the trial court properly grant summary judgment because a de facto taking of DUWA's property did not occur in this case?

### DISCUSSION

**The Trial Court Properly Granted Summary Judgment Because A De Facto Taking Of DUWA's Property Did Not Occur.**

¶ 10 DUWA challenges the grant of summary judgment in favor of Tempe on DUWA's inverse condemnation claim. We review the grant of summary judgment under a de novo standard. *Sanchez v. City of Tucson*, 191 Ariz. 128, 130, ¶ 7, 953 P.2d 168, 170 (1998). We review the facts de novo and in the light most favorable to the nonmovant. *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997).

¶ 11 DUWA acknowledges that Tempe did not physically invade its property or otherwise interfere with its ingress or egress. It further concedes that Tempe's mere announcement of a redevelopment project for the Apache Boulevard area did not constitute a constitutional taking of its property. However, DUWA asserts that Tempe abused its condemnation powers by "specifically and unreasonably targeting DUWA's property" via its February 1996 representations that Tempe did not want a bowling alley in the area and that further investment or expansion of the business was unwise as Tempe anticipated condemning the property within a couple of years.

¶ 12 The Arizona Constitution, Article 2, Section 17, provides that property shall not be "taken or damaged" without just compensation therefor. If there has been a taking and the pertinent governmental authority has failed to pursue a proper condemnation action, the landowner may initiate an inverse condemnation action to secure compensation. *State v. Hollis*, 93 Ariz. 200, 202–03, 379 P.2d 750, 751 (1963).

¶ 13 DUWA essentially asserts that Tempe's actions constituted a de facto taking of its property. The New York Court of Appeals discussed the elements of a "de facto" taking in *City of Buffalo v. J.W. Clement Co.*, 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971), a case very similar to the matter at hand. There, the city had instituted an urban redevelopment plan for the area encompassing the J.W. Clement Company's printing business. *Id.* at 899. Beginning in 1957, the executive secretary of the city plan-

---

**3.** The court declined to revisit the statute of limitations ruling already rendered by Judge Hoag.

ning board represented to Clement principals that Clement would have to vacate its premises in three years to five years. *Id.* In July 1962, the mayor of Buffalo and the commissioner of urban renewal advised Clement's president that negotiations for the property were scheduled for the spring of 1963. *Id.* As a result, Clement embarked on a costly relocation of its business which it completed in April of 1963. *Id.* The city, however, did not institute condemnation proceedings until several years later. *Id.* at 901. There was evidence that the value of the property depreciated in the interim due to the widespread publicity regarding the impending condemnation, the related general decline of and increased vacancies in the area, and the systematic lowering of property assessments and denial of building permits in the area by the city. *Id.* at 900.

¶ 14 Clement asserted that a de facto taking of its property occurred in 1962 or 1963 given the city's targeting of its property and representations that it would be condemned in that time frame. The New York court disagreed. The court noted that the condemning authority is generally not liable to the condemnee until title to the property is officially taken. *Id.* at 902. While the court recognized the possibility of a de facto taking, it held that such an event occurred only when the government either physically entered the property and ousted the owner, or otherwise legally interfered with the owner's "physical use, possession or enjoyment of the property. . . ." *Id.* at 903. The court held that the mere manifestation of an intent to condemn, even when coupled with specific representations regarding the timing of condemnation and protracted delay, did not constitute a de facto taking. *Id.* Rather, the landowner must demonstrate some exercise of dominion or control over the property by the governing authority, and corresponding direct or indirect deprivation of the landowner's possession, enjoyment or use of his property. *Id.* at 903–04.

¶ 15 The court went on to note that public policy considerations prohibited a finding of a de facto taking under the facts of the case. *Id.* at 904. The court feared that if the announcement of an impending condemna-

tion and meetings on the issue with city officials could constitute a de facto taking, it would hinder the condemning authority's ability to plan for condemnation and publicize its plans to the community or provide appropriate advance notice of condemnation to the property owner. *Id.*

¶ 16 We find the *City of Buffalo* decision persuasive. It comports with Arizona law which, to date, has only recognized a "taking" of property where the government either assumes actual possession of the property or places a legal restraint upon the property that substantially diminishes or destroys the owner's right to, and use and enjoyment of, the property. *See In re Forsstrom,* 44 Ariz. 472, 481–82, 38 P.2d 878, 882–83 (1934), *overruled on other grounds by State ex rel. Morrison v. Thelberg,* 87 Ariz. 318, 350 P.2d 988 (1960).

¶ 17 DUWA asserts that we should disregard *City of Buffalo* because New York's Constitution provides compensation only for property that has been "taken," whereas Arizona's Constitution allows just compensation for property that has been "taken or damaged." Ariz. Const. art. 2, § 17. DUWA contends that the broader language of the Arizona Constitution provides for recovery in cases, such as this one, where the governing authority's acts have "damaged" the value of the property even though the government has not initiated an eminent domain proceeding or otherwise asserted control over the property.

¶ 18 This court previously rejected a similar inverse condemnation claim for "depreciation in value." *Uvodich v. Arizona Bd. of Regents,* 9 Ariz.App. 400, 453 P.2d 229 (1969). In *Uvodich,* the property owners asserted that the Board of Regents caused their property to depreciate in value prior to condemnation by acquiring other property in the area as part of a University of Arizona expansion which flooded the area with parking lots and sites for University buildings. *Id.* at 404, 453 P.2d at 233. This court rejected the argument that such "depreciation in value" was recoverable in an inverse condemnation case under the "damaged" language of the constitution. *Id.* at 404–05, 453 P.2d at 233–34. The court noted that the word "damage"

must be interpreted narrowly when determining what constitutes "damages" in the constitutional sense. *Id.* While the court recognized that tenant vacancies, increases in crime, and general disrepair incident to an urban expansion or redevelopment program could result in economic losses to a property owner, the court held that such damages were not " 'damage' within the purview of Art. 2, § 17." *Id.* at 405, 453 P.2d at 234. The court further noted that its decision was in accord with the general rule in the country. *Id.*

¶ 19 This view continues to be the prevailing one. While DUWA argues that *City of Buffalo* is distinguishable because New York's Constitution does not include the "taken *or damaged* " language found in ours, several other state courts have followed *City of Buffalo* even though the taking provisions of their constitutions track the language of our constitution. *See, e.g., City of Northglenn v. Grynberg,* 846 P.2d 175, 178–80 (Colo.1993) (rejecting inverse condemnation claim based upon city's acquisition of surface estate, drilling of core hole for survey, and publishing of report indicating lack of commercially exploitable coal reserves on property despite taken or damaged provision in constitution); *Orfield v. Hous. & Redevelopment Auth.,* 305 Minn. 336, 232 N.W.2d 923, 926–27 (1975) (deciding that economic loss caused by altered character of neighborhood due to normal activities in connection with urban renewal project did not constitute a de facto taking of the property in constitutional sense even though Minnesota Constitution requires compensation whenever property is taken, destroyed or damaged for public use); *Empire Constr., Inc. v. City of Tulsa,* 512 P.2d 119, 123–24 (Okla.1973) (rejecting landowner's inverse condemnation claim for threatened but uncompleted taking of property for use in city's expressway plan as city's representations regarding acquisition did nothing to restrict landowner's power of dominion or control over property).

¶ 20 In support of its contention that a de facto taking of its property occurred, DUWA relies on *Klopping v. City of Whittier,* 8 Cal.3d 39, 104 Cal.Rptr. 1, 500 P.2d 1345 (1972). *Klopping* is distinguishable from the matter at hand. In *Klopping,* there were overt governmental acts seeking to assert dominion or control over the property—the city filed condemnation proceedings against the plaintiffs' properties in 1965, subsequently adopted a resolution to dismiss the suits pending resolution of a condemnation proceeding against an unrelated third party (while simultaneously issuing an official statement that it intended to reinstate condemnation proceedings against plaintiffs' properties as soon as it resolved the other matter), then re-filed condemnation proceedings in 1969. *Id.* at 1348, 1350.

¶ 21 Tempe never made any official overt act seeking control over DUWA's property. Moreover, *Klopping* was not even a de facto taking case, like the one asserted by DUWA. Rather, *Klopping* presented issues of valuation *at the actual eminent domain proceedings filed by the city*—namely, whether the court should consider the adverse economic effects of pre-condemnation publicity on the taken property. *Id.* at 1351. In fact, the *Klopping* court recognized that the prevailing rule to establish a de facto taking required physical invasion or direct legal restraint of the property. *Id.* Subsequent California cases confirm that for a taking of private property to entitle the plaintiff to maintain an action for inverse condemnation, there must be an invasion of the property or appropriation of some valuable property right from the landowner, and the invasion or appropriation must directly and specifically cause the landowner injury. *Selby Realty Co. v. City of San Buenaventura,* 10 Cal.3d 110, 109 Cal.Rptr. 799, 514 P.2d 111, 117 (1973); *see also Toso v. City of Santa Barbara,* 101 Cal.App.3d 934, 957, 162 Cal.Rptr. 210 (1980) (determining that widespread impact resulting from general planning in not compensable; instead, prerequisite for damages for inverse condemnation is formal resolution of condemnation or some other official act towards acquisition of plaintiff's property).

¶ 22 Tempe committed no official overt acts of dominion over DUWA's property, nor has DUWA demonstrated that it was ever prohibited from exercising dominion and control over its own property. Accordingly, DUWA has failed to establish a claim for a de facto taking. *See Beaux Arts Properties, Inc. v. United Nations Dev. Corp.,* 68 Misc.2d 785, 328 N.Y.S.2d 16, 22 (N.Y.Sup.

Ct.1972) ("concept of a de facto appropriation is limited to situations in which there has been a *direct* invasion by the condemning authority upon the property of the condemnee or some *direct* legal restraint upon the use of such property"), *aff'd,* 39 A.D.2d 844, 332 N.Y.S.2d 1008 (N.Y.1972); *see also Calhoun v. City of Durant,* 970 P.2d 608, 612, ¶ 10 (Okla.Civ.App.1997) (constitution measures taking of property not by what state says or intends, but by what it *does* ).

## CONCLUSION

¶ 23 DUWA failed to demonstrate that Tempe either physically invaded its property or otherwise exercised any dominion or control over the property. None of the actions alleged against Tempe demonstrate any interference with DUWA's exercise of control over its own property. Because a de facto taking of DUWA's property did not occur, the trial court properly granted summary judgment for Tempe.[4] We affirm the judgment for Tempe.

CONCURRING: JAMES B. SULT, Presiding Judge and PHILIP HALL, Judge.

---

**4.** In light of our holding on this issue, we do not address the other grounds for affirmance assert-ed by Tempe.