OPINION OF THE COURT
John R. Tenney, J.
In these assessment review proceedings, petitioners have moved for summary judgment on three different issues: (1) petitioners contend the State equalization rates *410 for the years 1972 through 1980 are the proper rates to be applied to the City of Syracuse; (2) section 3-a of the General Municipal Law limiting interest on tax refunds to 3% is unconstitutional since it is not just compensation; and (3) each petitioner is entitled to an additional allowance of $2,500 under subdivision 2 of section 722 of the Real Property Tax Law.
The State equalization rate has been the subject of a great deal of legislation and litigation particularly with reference to the interpretation of section 720 of the Real Property Tax Law. In 1967, it was held that the State equalization rate could not be the sole basis for determining the assessment ratio. (Matter of O’Brien v Assessor of Town of Mamaroneck, 20 NY2d 587.) In 1969, section 720 was amended and in Guth Realty v Gingold (34 NY2d 440), it was determined that the State rate alone was sufficient evidence to establish a prima facie case. There have been numerous other changes by the Legislature during this period of time, but they have been superseded by the current statute (L 1981, ch 1057, § 7) which permits the use of the State equalization rate as evidence which can be offered by either party. (The reference to special assessing units does not apply to the City of Syracuse.) The effect of the 1981 amendment is to reinstate the principle established in Guth Realty v Gingold (supra). (See, also, 860 Executive Towers v Board of Assessors of County of Nassau, 53 AD2d 463; McCrory Corp. v Gingold, 52 AD2d 23; Matter of Green Constr. Corp. v Finance Administrator of City of N. Y., 56 NY2d 369.)
Petitioners argue that the existing decisions have established that the proof of the State rate is conclusive. In the alternative, since there are methods available to challenge the State rates (Real Property Tax Law, §§ 760, 1200-1212), the city is estopped because it has failed to do so for the years prior to 1980.
First, there is no indication in the Guth decision that the court intended to preclude the taxing authority from questioning the validity of the State rate, and thus it is not conclusive evidence. Second, petitioners’ position regarding an estoppel against the city is also not supported by *411 existing law. (Schwartz v Public Administrator of County of Bronx, 24 NY2d 65.)
However, there is a partial estoppel and petitioners are entitled to partial summary judgment for those years where the validity of the State rate has been fully litigated or the City of Syracuse has admitted its validity. (Matter of Presidential Plaza Corp. v Srogi, 50 AD2d 717, app den 38 NY2d 708; Matter of Adcor Realty Corp. v Srogi, 54 AD2d 1096.) Therefore, summary judgment for the years 1972-1975 is granted. For the subsequent years, petitioners shall meet the requirements established in Guth Realty v Gingold (34 NY2d 440, 449-450, supra).
Petitioners’ second argument that the city has engaged in a systematic practice of overassessing commercial properties and then misusing the judicial process to delay the return of the excessive tax money has been discussed in Grant Co. v Srogi (71 AD2d 457). Petitioners contend that the court’s failure to take a position and to recognize the course of conduct of the City of Syracuse makes it impossible to resolve this matter at any time. Petitioner cites numerous cases in support of its argument that the city has deliberately overassessed properties, then after court reductions and appellate affirmance, reinstated the overassessment. The argument is that this was an effort to retain the taxpayers’ money at an unreasonable and unjust rate of interest. A typical course of action is set forth in Grant Co. v Srogi (supra, pp 470-474).
Whether such a pattern of overtaxation constitutes a “taking” in the constitutional sense, as argued by petitioners, has not been directly addressed by the courts. However, the general principles of “taking” jurisprudence have recently been discussed in Penn Cent. Transp. Co. v New York City (438 US 104; see, also, Armstrong v United States, 364 US 40). The court reasoned (438 US, at pp 130-131) “in deciding whether a particular governmental action has effected a taking * * * [the outcome depends upon] the character of the action and on the nature and extent of the interference with rights in the parcel as a whole”.
The complications created by attempts to appraise real property invariably result in inequitable assessments. Since the authority to tax is not questioned, errors in *412 exercising that authority cannot be singled out. Even if it could be established that there was a plan entered into by the municipality to knowingly overassess for the purpose of raising capital, it is not an action which directly interferes with the right to use the property. Such conduct by government officials is a genuine possibility, but the effect does not meet the definition of a “taking” and must be treated in some other manner.
The issue in this case is more basic. Here, we address the general equitable power granted to the judiciary to provide just relief from an overassessment regardless of the motive. Earlier cases have recognized these equitable powers even to the extent of allowing a taxpayer to withhold the payment of taxes pending a final court determination of value. Although limited to extreme cases, the taxpayer does have the opportunity to establish for the court that he is entitled to injunctive relief. (Grant Co. v Srogi, 71 AD2d 457, affd 52 NY2d 496, supra; see, also, Matter of Manufacturer’s Hanover Trust Co. v Tax Comm, of City of N. Y., 31 AD2d 606, affd 28 NY2d 514.)
The assessment of real property is an equitable proceeding, and the very purpose of a tax review proceeding is to arrive at a fair and reasonable value of the property involved (Grant Co. v Srogi, 52 NY2d 496, 512, supra). In the case of overassessment, equity requires just compensation, in the form of a fair and reasonable interest rate, for any amounts improperly collected. There is no indication that the Legislature intended to pre-empt the field by enacting section 3-a of the General Municipal Law establishing the interest rate at 3%.
Traditionally, the question of just compensation is a judicial function which the Legislature may not usurp. (City of Buffalo v Clement Co., 28 NY2d 241, 266.) (The Legislature has recently made certain adjustments to eliminate the inadequacies and the obvious injustices of the interest rates allowed in other fields [Real Property Tax Law, § 734; CPLR 5004]. These do not effect this litigation, and in any case, are not conclusive.) (See, also, Matter of South Bronx Neighborhood Dev. Plan, 110 Misc 2d 571.) The fact that the need to provide compensation arises from the exercise of the taxing power rather than *413 from the exercise of the condemnation power does not make the legislative pronouncement irrebuttable, nor eliminate the court’s duty to reach an equitable result.
The effect of an overassessment and the collection of an excess amount of money is to unjustly enrich the other taxpayers. It has the effect of forcing a taxpayer to loan his money to the municipality. When the error is discovered, the return of the excess payment should be accompanied by an interest rate which will make him whole. In no circumstance should a municipality which receives a taxpayer’s money because of an inequitable assessment be permitted to pay less for the use of the money than it would have to pay in the ordinary course of its business.
It is well recognized that municipalities often fund their everyday operations with tax anticipation notes. Since the interest rate for such notes is readily determinable for any given time, this is a reasonable basis for establishing the interest rate for tax refunds. Anything less would defeat the purpose of fair assessment of real property and encourage abuses which have evidenced themselves in the City of Syracuse.
Petitioners’ right to an additional allowance under section 722 of the Real Property Tax Law has been discussed in Grant Co. v Srogi (71 AD2d 457, 474, supra) where the court stated that “[a] sovereign may not arbitrarily separate a citizen from his property and then unduly delay its mandated return.” In that case, the court observed that there were over 150 reduction proceedings against properties in the City of Syracuse, that many of them were repetitious and that the city had taken various actions to enhance the delay. In the Grant case (p 473), “despite the taxpayers’ complete success in the courts and after 15 years of litigation, the city has refunded, at most, $80,000 of the more than $600,000 of taxes which it has unlawfully collected”.
The court {supra, p 475) found abundant evidence of overassessments and observed that the 3% interest rate might be a tolerable arrangement:
“when a good-faith error of overvaluation occurs in an annual assessment, but when overvaluation is repeated year after year, it represents precisely the abuse which the *414 Legislature sought to correct when it enacted subdivision 2 of section 722 of the Real Property Tax Law. When viewed in the context of this case the $2,500 additional allowance permitted by that statute seems a trivial consolation.
“Ad valorem tax laws are predicated on the assumption that property values will be fairly determined, but the city has ignored the statutory mandate to assess real property at its fair market value and it has repeatedly imposed unlawful assessments on petitioner’s property. The taxpayer’s demonstrably meritorious complaints have been delayed by tactical maneuvers designed to accomplish only one purpose — to hold the line on assessment values at whatever cost to the property owner.”
Thus, there is a recognition that such assessment practice authorizes the section 722 penalty. To establish its rights to the penalty, petitioner should offer proof that it has been similarly treated.