665 P.2d 1002

**TUCSON AIRPORT AUTHORITY, an Arizona non-profit corporation, Plaintiff/Appellant/Cross Appellee,**

v.

**Albert FREILICH, Albert Freilich, as Trustee of Testamentary Trust of Hannah Freilich, deceased, Defendant/Appellee/Cross Appellant.**

No. 16114–PR.

Supreme Court of Arizona,
En Banc.

May 24, 1983.

Rehearing Denied July 6, 1983.

Bilby, Shoenhair, Warnock & Dolph by James F. Morrow, Tucson, for plaintiff/appellant/cross appellee.

Stubbs & Townsdin by Robert C. Stubbs, G. Lawrence Schubart, Tucson, for defendant/appellee/cross appellant.

FELDMAN, Justice.

Appellant/Cross-Appellee, Tucson Airport Authority (TAA) petitioned this court to review the decision of the court of appeals in *Tucson Airport Authority v. Freilich,* 135 Ariz. 285, 665 P.2d 1007 (App. 1982). We have jurisdiction and accept review pursuant to Ariz. Const. art. 6, § 5(3), and Ariz.R.Civ.App.P. 23, 17A A.R.S.

Appellee/Cross-Appellant Freilich (Freilich) owned 158.18 acres of unimproved desert land which was located next to Ryan Field in Pima County Arizona. TAA sought to purchase the property from Freilich but when the parties could not agree on a price, TAA filed a condemnation action. A summons was issued on December 20, 1979. On May 13, 1980, an order of immediate possession was entered allowing TAA to take possession of .47 acres of the land for a radar installation and access road.

The case was tried to the court, sitting without a jury. The trial judge made findings of fact and conclusions of law. The trial court found that the value of the 158.-18 acres taken was $3,500 per acre and accordingly awarded Freilich $553,630. In computing interest to be awarded, the trial court found that the taking of the .47 acres constituted an effective possession of the entire parcel. In accordance with A.R.S. § 12–1123(B), the trial court therefore included interest on the entire award at the legal rate of 10%, to run from May 13, 1980, the date of possession of the .47 acre parcel, to the date of judgment. The court also awarded interest after judgment at 10%. In a minute entry order dated April 23, 1981, the trial court stated the following with respect to the rate of interest:

> The Court cannot award a higher interest rate than a statutory rate of ten percent (10%) per annum, however, if the Court could award a higher rate of interest THE COURT FINDS that a reasonable rate of interest is twelve percent (12%) per annum.

TAA appealed from the portion of the judgment designating the taking of the .47 acres as an effective possession of the entire parcel. The court of appeals agreed with TAA that the record did not support this finding and held further that the condemnor was required to pay prejudgment interest on only that portion of the final award attributable to the property of which the condemnor had taken possession before judgment. We affirm the court of appeals' resolution of this issue.

In his cross-appeal, Freilich argued that irrespective of the possession issue, just compensation required the payment of interest on the entire award from the date on which the summons was issued. He also claimed that the condemning authority should be liable for payment of interest on the entire award because of its alleged failure to make a reasonable settlement offer. The court of appeals ruled against Freilich

on each of the contentions, and we also agree with its resolution of these issues.

Freilich's last contention was that the trial court erred in awarding 10% statutory interest rather than setting a reasonable rate based upon the evidence he had introduced regarding economic factors. There was evidence introduced at trial that given economic conditions which prevailed during the relevant period, 12% would have been a reasonable rate. On this issue, the court of appeals held that once the trial court found 12% to be a reasonable rate and the legal rate of 10% to be "unreasonable," the judge had the power to fix the rate in excess of the statute and erred in not doing so. The court of appeals therefore directed that Freilich be paid interest at 12% on $1,614.16 (the portion of the award representing the value of the .47 acres of land covered by the order of immediate possession) from the date of the order of immediate possession to the date of the entry of judgment. The court also held that Freilich be paid 12% interest on the entire award after judgment. We cannot agree with the court of appeals' resolution of the interest rate issue.

The Arizona Constitution, art. 2, § 17, provides in part:

No private property shall be taken or damaged for public or private use without just compensation having first been made . . . .

The fifth amendment to the United States Constitution also guarantees the payment of just compensation and this guarantee is applicable to the states through the fourteenth amendment. *Chicago, Burlington, & Quincy R.R. v. Chicago,* 166 U.S. 226, 241, 17 S.Ct. 581, 586, 41 L.Ed. 979 (1897).

■ "Just compensation" in eminent domain cases consists of "the full equivalent of the value of [the property] . . . paid contemporaneously with the taking." *Phelps v. United States,* 274 U.S. 341, 344, 47 S.Ct. 611, 612, 71 L.Ed. 1083 (1927). When the taking precedes the payment of compensation, an extra amount must be added to compensate the owner for the delay in payment. The United States Supreme Court explained this principle in *Seaboard Air Line Railway Co. v. United*

*States,* 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923):

Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking.

The delay between taking and payment results in a loss of use of the money owed to the condemnee at the moment of the taking. The condemnee must be compensated for this loss and "[i]nterest at a proper rate is a good measure by which to ascertain the amount to be so added." *Id.* Thus, the payment of interest on a condemnation award is designed to satisfy the constitutional requirement of just compensation by putting the owner "in as good a position pecuniarily as he would have occupied if his property had not been taken." *United States v. Miller,* 317 U.S. 369, 373, 63 S.Ct. 276, 279–80, 87 L.Ed. 336 (1943).

■ Since the payment of interest is a part of just compensation, the determination of the proper rate of interest is a judicial function. *Seaboard Air Line Railway Co. v. United States, supra; In the Matter of South Bronx Neighborhood Development Plan,* 110 Misc.2d 571, 571, 442 N.Y.S.2d 869, 869 (1981); *Troy Urban Renewal Agency v. Union National Bank of Troy,* 90 Misc.2d 240, 241–42, 394 N.Y.S.2d 131, 133 (1977). It has been generally recognized, however, that where the legislature has designated the rate of interest by statute, such rate can be applied to a claim for just compensation as long as the rate is reasonable and judicially acceptable. *See Miller v. United States,* 620 F.2d 812, 837, 223 Ct.Cl. 352 (Ct.Cl.1980); *County of Nassau v. Eveandra Enterprises,* 42 N.Y.2d 849, 850–51, 366 N.E.2d 287, 288, 397 N.Y.S.2d 627, 628 (1977); *Troy Urban Renewal Agency,* 90 Misc.2d at 242, 394 N.Y.S.2d at 133; 3 J. Sackman, *Nichols' The Law of Eminent Domain* § 8.63[3] (rev. 3d ed. 1981).

A.R.S. § 12–1123(B) provides that in condemnation cases the property owner is entitled to interest from the date on which the

government takes possession and has provided for such interest at a rate equal to "legal interest." The legal rate of interest is 10% per annum. A.R.S. § 44–1201(A).[1]

In the case at bench, the trial court applied this statutory rate to the judgment. The court of appeals held this was error because the trial court had found a rate of 12% to be reasonable and the legal rate to be "unreasonable." Once it found the legal rate to be constitutionally unacceptable, the court of appeals concluded, the trial court was obliged to apply the higher rate.

Initially, we disagree with the court of appeals' statement that the trial court found the legal rate "unreasonable." There is no finding of fact which reaches this conclusion. Further, we do not believe that a finding that 12% is "a reasonable rate" is necessarily a finding that 10% is an unreasonable rate. The term "reasonable" necessarily implies some range of findings that would be acceptable; because a particular figure is within that range does not mean that another, fairly close figure, is not. Admittedly, the fact that the trial judge singled out 12% is an indication that he concluded from the evidence that for the relevant time period 12% was the prevailing economic rate. This conclusion, however, does not necessarily indicate that the trial judge found the legal rate unreasonable.

Freilich argues that by finding the rate of 12% to be reasonable, the trial court had set this as the proper economic rate for the relevant time period and therefore, that rate should have been applied instead of the rate specified in the statute. Relying on several federal cases, Freilich contends that the rate set by statute would be a floor but not a ceiling on the rate of interest and the constitutional principle of just compensation would require the payment of interest at a rate above that specified in the statute whenever the trier of fact found the economic rate exceeded the statutory rate. See *United States v. Blankinship,* 543 F.2d 1272 (9th Cir.1976); *Miller v. United States, supra.*

After a review of the federal decisions, we find such a case-by-case determination of the rate of interest unsatisfactory and reject Freilich's argument for several reasons.

First, the federal cases cited by Freilich found that given recent economic conditions and high interest rates, application of a 6% statutory rate would violate the constitutional requirement of just compensation. Given those same considerations, we might have the same trouble in upholding a trial court determination that a 6% interest rate for the years 1979–1982 was constitutionally sound. However, 6% is not the legal rate applicable to this case. In response to changing economic conditions, the legislature amended Arizona's interest statute, increasing the legal rate from 6% to 10%, effective December 14, 1979.

Second, we are concerned about the question of uniform treatment of condemnees which we believe is relevant both to the objectives of the legislature in setting a statutory rate and the constitution in requiring the payment of just compensation. Even under the federal view, there is "a strong judicial policy in favor of the establishment of a uniform rate of interest applicable to condemnation cases in order to avoid discrimination among litigants." *Miller v. United States,* 620 F.2d at 838. We acknowledge that there is no uniformity with regard to substantive condemnation awards. Awards for adjoining parcels taken at the same time and for the same project may differ substantially because the cases are tried in different courtrooms, with different experts and decided by different finders of fact. However, it is also a basic tenet of condemnation law that every parcel of land is unique. To some extent at least, this is so and justifies varying awards for property. The same principle does not apply to money; in theory, every dollar bill is the same and is worth as much as every other. Interest is compensation for the use of money. Since money, unlike property, has neither unique characteristics nor dif-

---

1. Interest on any loan, indebtedness, judgment or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to.

ferent value, the compensation for its use should not vary from case to case.

Third, although in *Seaboard, supra,* the Supreme Court formulated the concept that interest must be paid even though the statute authorizing the taking neither required nor permitted the payment, the Court did not indicate that the rate set by the legislature should be ignored. Quite to the contrary, it held that the trial court had acted properly in applying the legal rate of interest established by the legislature of the state in which the condemned land was located. The Court stated that this method was "a palpably fair and reasonable method of performing the indispensable condition to the exercise of the right of eminent domain, namely of making 'just compensation' for the land as it stands, at the time of the taking." *Id.* 261 U.S. at 306, 43 S.Ct. at 356.

Finally, the determination of a precise "reasonable" rate of interest on a case-by-case approach is no easy matter. In addition to the time and expense involved in receiving evidence from economic experts hired by each party, there is no assurance that judges or jurors will be more successful than the legislature in determining the correct, reasonable rate. Compare, for example, the diverging theories adopted by the Ninth Circuit in *Blankinship, supra,* and in *United States v. 429.59 Acres of Land,* 612 F.2d 459 (9th Cir.1980); compare those formulations to the economic views of the New York Court in *Matter of South Bronx, supra,* and the Court of Claims in *Miller v. United States, supra.* If each trial court were obligated to receive evidence, determine and apply its own version of the reasonable economic rate, the results in each case would differ depending upon the evidence put forward by each party and the conclusions of each individual trier of fact. Conflicting determinations would all have to be affirmed if supported by sufficient evidence. Some appellate courts have themselves determined a reasonable rate to be applied by trial courts for all cases. These determinations are based upon judicial notice of statistics from various sources. *See Miller v. United States, supra.* This is a procedure we are not disposed to follow.

For all these reasons, we decline to follow the approach of the federal courts with respect to the issue of interest. In view of the recent legislative revision of the interest rate, we believe that the rate set by the legislature should be presumed reasonable and applied to all condemnation awards, unless the condemnee establishes by competent evidence that the application of that rate would violate the guarantee of just compensation. The condemnee could prove, for example, that the disparity between the statutory rate and the prevailing economic rate was so great that the former must be considered unreasonable and not judicially acceptable.

Turning to the facts of the instant case, the evidence presented at trial fell far short of establishing that the rate of 10% was unreasonable. There was no evidence of the real rate of return (i.e., differential between interest and inflation rate), returns from different types of investments, bond yields, tax considerations and other matters which a prudent investor would take into consideration. Mere proof that one could have earned 15% to 18% on insured certificates of deposit for part of the relevant time period is not sufficient to establish that a prudent person investing in an appropriate portfolio of bonds or other obligations comparable to that of the condemnor, *United States v. Blankinship,* 543 F.2d at 1276, would have obtained a return so far in excess of the statutory rate that the latter must be considered so unreasonable as to be constitutionally infirm.

Accordingly, the trial court properly applied the statutory rate of interest. The opinion of the court of appeals is approved except as modified by this decision. The case is remanded with directions to the trial court to enter an amended judgment consistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.