709 P.2d 1351

**FLOOD CONTROL DISTRICT OF MAR- ICOPA COUNTY, a municipal corpora- tion and a political subdivision of the State of Arizona, Plaintiff-Appellee,**

v.

**Robert Ong HING and Alice Y. Hing, his wife; H. Wendell Hobbs and Elinor Hobbs, his wife; Stewart Title & Trust of Phoenix, an Arizona corporation; Scottsdale Racquet Club, Inc., an Arizo- na corporation; First Federal Savings and Loan Association, a federal corpo- ration; Unknown Owners; Unknown Heirs of the Above-Named Parties, if Deceased, Defendants-Appellants.**

No. 1 CA–CIV 7171.

Court of Appeals of Arizona, Division 1, Department B.

July 9, 1985.

Review Denied Nov. 13, 1985.

Reed, Goldstein & Ayers, P.C. by Michael A. Graham, Phoenix, for plaintiff-appellee.

Wentworth, Lundin, Stockton & Hing by John Lundin, Robert Ong Hing and Dari S. Hing, Scottsdale, for defendants-appellants.

## OPINION

CONTRERAS, Judge.

This appeal arises in an action to condemn property in order to construct an interceptor channel as part of the Lower Indian Bend Wash Flood Control Project. The defendants challenge the valuation date, the condemnation award, and the trial court's refusal to award attorney's fees and expert witness fees. We are also presented with the constitutionality of A.R.S. § 12–1127(B) (1982) which mandates that payment to a condemnee of funds paid into court by the condemnor based upon a judgment constitutes an abandonment of all defenses except the condemnee's claim for greater compensation. We hold that the statute is constitutional. We also affirm the intermediate decisions and orders of the trial court along with the judgment.

Defendants owned a 55.3-acre parcel of real property located at the southeast corner of the intersection of Indian Bend and Hayden roads in Scottsdale, Arizona. On June 5, 1973, the City of Scottsdale tentatively agreed to rezone defendants' property to R–4R, which permits resorts and commercial uses appurtenant thereto such as restaurants, cocktail lounges, retail shops, town houses, and condominiums with a maximum of 7¼ units per acre. The rezoning was subject to two conditions, first, that defendants dedicate the southerly 80 feet of the property for recreational uses, and second, that defendants grant a permanent drainage easement not more than 400 feet wide running the length of the property and north of the portion dedicated for recreational uses. The defendants never agreed to the two conditions, and the zoning of the property remained at R1–43, which permits development for residential uses at a density of one house per acre. For purposes of valuation, however, the property was treated as if it had the R–4R zoning.

In 1974 and 1978, the board of directors of the Flood Control District of Maricopa County (District) passed resolutions establishing the public use and necessity of the flood control project. On January 26, 1979, the District brought an action to condemn a 20.89–acre strip of land along the southern border of defendants' property. On February 1, 1979, the District filed an application for an order of immediate possession. Both parties presented evidence related to the public use and necessity of the condemnation and the probable damages that would be sustained from the taking. In a January 24, 1980, ruling, the trial court authorized the District to take immediate possession of the 20.89 acres. The court also ruled that the land was necessary for public use; set the valuation date as January 26, 1979, the date of the summons and complaint; and set a figure of $1,153,880 as the probable damages to defendants. By stipulation and pursuant to A.R.S. § 12–1116(H) (Supp.1979), defendants were permitted to withdraw the probable damage funds on February 15, 1980.

Prior to trial on the issue of the amount of just compensation, defendants filed motions for a full trial on the issue of necessity and to set the date of valuation as the date of trial or in the alternative, as of the date of immediate possession. The motions were denied. After hearing 10 days of testimony and argument, the trial court issued its findings of fact, conclusions of law and judgment awarding defendants

$1,880,100 as just compensation for the value of the property taken. The December 8, 1982, judgment also stated that the valuation date to be used was January 26, 1979, the date of the summons and complaint, and provided that interest was payable from January 24, 1980, on the difference between the just compensation award and the immediate possession award. Additionally, the trial court allowed defendants their taxable costs and rejected their request for attorney's fees and for expert witness costs.

On December 15, 1982, defendants requested the trial court to order release of the funds awarded as just compensation. In their application, defendants stated that their request was made because the District insisted that once it had deposited the funds with the court it no longer was obligated to pay interest. The defendants stated that they wanted to prevent further loss of interest on the additional award in light of plaintiff's position regarding its liability for further interest. Additionally, defendants asserted that conditioning the withdrawal of funds on the abandonment of all defenses except as to the just compensation award was unlawful. The trial court noted the defendants' objections and ordered the funds released. Defendants also filed a motion to amend the judgment or for a new trial. The motion was denied, and a notice of appeal was filed on March 7, 1983, setting forth six matters which were being appealed: the order for immediate possession, the judgment on just compensation, the order regarding withdrawal of funds deposited by plaintiff, the order denying the motion to amend the judgment or for a new trial, the order regarding statement of costs, and the final condemnation order.

On July 1, 1983, the District filed a motion for partial dismissal of appeal asserting that because of the operation of A.R.S. § 12–1127(B), there was a lack of jurisdic-

tion of any issue other than that related to the claim for greater compensation. Additionally, the District asserted that estoppel and waiver applied to bar defendants' appeal and that defendants had failed to properly preserve the issues other than what constituted just compensation. The District also asserted that the defendants never presented the issue of the constitutionality of A.R.S. § 12–1127(B) to the trial court. In an order filed August 1, 1983, this court denied the District's motion, ruling that a determination as to which issues might properly be raised would be made when the appeal was before this court on the merits. We find that the constitutionality of A.R.S. § 12–1127(B) was fairly presented to the trial court and will be considered.

## WAIVER OF DEFENSES

The issue of whether defendants waived all defenses other than their claim for just compensation affects several of the 16 issues presented by appellants in their opening brief. These are the assertion that defendants are entitled to a full trial on the issue of necessity and the assertion that the taking of 20.89 acres was not necessary for a public use. Defendants assert that A.R.S. § 12–1127(B) is a violation of equal protection and due process rights under the United States and Arizona Constitutions. Additionally, defendants allege that the statute violates the constitutional requirements for just compensation.

A.R.S. § 12–1127 was adopted from California. *Viliborghi v. Prescott School District No. 1*, 55 Ariz. 230, 100 P.2d 178 (1940) and historical note to A.R.S. § 12–1127. Although no Arizona cases have yet reviewed our statute in the face of the challenges raised by defendants, California courts have repeatedly upheld what is virtually the same statute [1] when faced with similar constitutional attacks. In *Redevel-*

---

1. The relevant portion of California Code of Civil Procedure § 1254(f) provides:

The court, or a judge thereof, upon application by such defendant, shall order and direct

*opment Agency of the City and County of San Francisco v. Goodman,* 53 Cal.App.3d 424, 125 Cal.Rptr. 818 (1975), the defendants in a condemnation action appealed the trial court's denial of interest and challenged the condemnor's compliance with applicable federal law, the necessity of the taking and the adequacy of the compensation award. The defendants alleged that requiring them to forego interest on the just compensation award in order to appeal denied them just compensation and deprived them of due process and equal protection of the law. 53 Cal.App.3d at 430, 125 Cal.Rptr. at 821.

The California Court of Appeal rejected the just compensation argument as being based on an overbroad generalization. 53 Cal.App.3d at 431, 125 Cal.Rptr. at 822. The court recognized that interest is constitutionally required when a condemnee is deprived of his property before he receives his award, but stated that where, as in *Goodman,* the award was deposited with the court upon rendition of the judgment, any loss of interest was due solely to the defendants' conduct. *Id.* For that reason, a defendant should not be heard to complain of any deprivation of just compensation. *Id.* (citing *Pacific Gas & Electric Co. v. Superior Court,* 33 Cal.App.3d 321, 109 Cal.Rptr. 10 (1973)).

In rejecting the defendants' assertion in *Goodman* that the waiver requirement deprived them of due process and equal protection, the court stated that the right to appeal is statutory, not of constitutional

origin, and may be made subject to certain conditions. 53 Cal.App.3d at 432, 125 Cal. Rptr. at 822 (citations omitted). The court recognized that the statute appears to give the condemnor greater freedom to enjoy possession of the subject property pending appeal while the appellant foregoes payment of interest, but found that this discrimination:

> [I]s not irrational in the light of the policy of section 1254, which is to mitigate the delays incident to condemnation proceedings by permitting property to be taken and used for a public use during litigation. Moreover, the Legislature could rationally conclude that a condemnee who denies the existence of a right to take should be prevented from making a somewhat inconsistent demand for interest on the award while pursuing his appeal.

53 Cal.App.3d at 432, 125 Cal.Rptr. at 822–23; *see also Pacific Gas, supra; Regents of University of California v. Morris,* 266 Cal.App.2d 616, 72 Cal.Rptr. 406 (1968). The court also stated that just compensation is made when the judgment award is paid into court, and any statutory conditions imposed on the right to withdraw the award did not alter that conclusion. *Goodman,* 53 Cal.App.3d at 431, 125 Cal.Rptr. at 822 (citing *Pacific Gas, supra* ).

We find that the rationale of the *Goodman* case is persuasive here. A.R.S. § 12–1127(B) clearly states that withdrawal of the condemnation award is conditioned on an abandonment of some defenses.

that the money so paid into court for him be delivered to him upon his filing a satisfaction of the judgment, or upon his filing a receipt therefor, and an abandonment of all defenses to the action or proceeding, except as to the amount of damages that he may be entitled to in the event that a new trial is granted. A payment to a defendant, as aforesaid, shall be held to be an abandonment by such defendant of all defenses interposed by him, excepting his claim for greater compensation.
The relevant portion of A.R.S. § 12–1127(B) provides:
The court shall, upon application, order the money so paid into court delivered to the party entitled thereto upon his filing either a

satisfaction of the judgment or a receipt for the money, and an abandonment of all defenses to the action or proceeding except as to the amount of damages to which he may be entitled if a new trial is granted. Such payment shall be deemed an abandonment of all defenses, except the party's claim for greater compensation.
The California laws on eminent domain were revised and reorganized in 1975. The statute conditioning withdrawal of the just compensation award on waiver of all defenses except as to the amount is C.C.P.A. § 1268.140(a)(2) (Deering 1981).

Furthermore, the legislative purpose for precluding appeal on issues other than just compensation is compelling. The legislature has determined that a property owner may not receive and utilize the funds or, for that matter, dissipate the funds while he challenges the taking because, under such circumstances, there would be no security or assurance that the condemnor would be able to recoup those public funds if the property owner should prevail upon appeal and thereby invalidate the acquisition. We therefore hold that defendants' appeal is limited to issues relating to increased compensation and we proceed to consider only such issues.

## VALUATION DATE

The next issue is whether the trial court erred in fixing the date of the summons as the date for valuation purposes instead of either the date of trial or the date of the order granting immediate possession.[2] Defendants contend that because of lengthy delays between the date of the summons and the actual taking or transfer of title, they were deprived of gain they would have realized from inflation and rapid land appreciation. For this reason, defendants argue, the compensation awarded is not just.

We find the issue is controlled by our supreme court's decision in *Desert Waters, Inc. v. Superior Court,* 91 Ariz. 163, 370 P.2d 652 (1962). In *Desert Waters,* the supreme court expressly adopted the reasoning of the California cases holding that the legislature may select a convenient time for assessing the value of property and fixing the amount of compensation. 91 Ariz. at 173, 370 P.2d at 659. In some instances, the condemnee may fare better or worse under the legislature's chosen date, but he "may not complain when, be-

cause of market fluctuations, the compensation fixed by this rule is less than the market value at some other time during the condemnation proceeding." 91 Ariz. at 173–74, 370 P.2d at 659. Under the ruling in *Desert Waters,* any change in the date of valuation is to be made by the legislature and not by the court.

## ENTITLEMENT TO INTEREST

Defendants next assert that the trial court made several errors in determining the amount of interest that was due. Their first contention is that interest should have been awarded from the date of valuation instead of from the date of the order granting the District immediate possession because the former date is the date of the taking. Second, defendants contend that they should have received interest at the rate of 4 percent per month instead of the statutory rate of 10 percent per year because they lost an investment they state was appreciating at the higher figure. Finally, defendants contend that they should be paid additional interest for the period between the District's payment of the compensation award into court and the court's release of the funds. We find no merit to any of these contentions.

◼ The first assertion of error is controlled by *Tucson Airport Authority v. Freilich,* 136 Ariz. 280, 665 P.2d 1002 (1983). In *Freilich,* the supreme court upheld the court of appeals' rejection [3] of a condemnee's assertion that just compensation required the payment of interest on the entire award from the date the summons was issued. 136 Ariz. at 281–82, 665 P.2d at 1003–04. The court of appeals, citing *Desert Waters, supra,* had stated that the legislature is permitted under the Constitution to decide when interest be-

---

**2.** A.R.S. § 12–1123(A) (1982) provides:
 For the purpose of assessing compensation and damages, the right to compensation and damages shall be deemed to accrue at the date of the summons, and its actual value at that

date shall be the measure of compensation and damages.

**3.** *Tucson Airport Authority v. Freilich,* 136 Ariz. 285, 665 P.2d 1007 (App.1982).

comes payable. 136 Ariz. at 288, 665 P.2d at 1010. If the legislature had intended to make interest payable from the date of the summons, it would not have enacted A.R.S. § 12–1123(B), which provides interest from the date of immediate possession. *Id.*

■ The supreme court's decision in *Freilich* also controls the issue of the proper rate of interest. Where the legislature has designated the rate of interest by statute, that rate may be used so long as it is reasonable and judicially acceptable. 136 Ariz. at 282, 665 P.2d at 1004. The court further stated that the 10 percent statutory rate, which became effective on December 14, 1979, should be presumed reasonable unless the condemnee could prove that the statutory rate was judicially unacceptable. 136 Ariz. at 284, 665 P.2d at 1006. As an example of what would be unacceptable, the court mentioned cases where the statutory rate was far below the prevailing rate. The court stated, however, that mere proof that an investor could earn up to eight percentage points more interest on one particular investment over another was insufficient to prove that the statutory rate was unreasonable. *Id.*

■ Defendants here complain that they suffered a significantly greater loss than could be compensated by the statutory interest rate because had they been paid the market value of the subject property at the date of valuation, they would probably have invested the money "in a substitute investment property with an appreciation rate similar to the condemned parcel, i.e., with a rate of return of 4% per month." In the alternative, defendants urge the court to take judicial notice of the commercial rate of interest and award them a variable rate based on what was being paid for jumbo Certificates of Deposit. Defendants' proffers are inadequate to overcome the presumption that the statutory rate is reasonable. As the District points out, interest is compensation for use of money, not for loss of appreciation of an investment in real property. *See City of Scottsdale v. Church of the Holy Cross Lutheran,* 132 Ariz. 416, 420, 646 P.2d 301, 305 (App.1982) (condemnation is not concerned with special damages to the landowner arising from loss of profits or loss of future expectations). Furthermore, our supreme court in *Freilich* specifically rejected the idea that the proper rate of interest should be determined on a case-by-case basis. 136 Ariz. at 284, 665 P.2d at 1006.

■ Defendants' final argument concerning interest relates to their contention that interest should be paid for the three days between the District's payment of funds into court and the court's release of these funds. It is asserted that payment of the just compensation award was not legally tendered to defendants until December 16, 1982, the date the clerk of the court released it. A.R.S. § 12–1124 (1982) authorizes the condemnor to make the payment of damages either to the defendants directly or to the court. Once the District complied with the method of payment authorized by statute, just compensation was paid and its obligation to pay interest ended. *See Morton Grove Park District v. American National Bank and Trust Co.,* 78 Ill.2d 353, 35 Ill.Dec. 767, 399 N.E.2d 1295 (1980); *Goodman,* 53 Cal.App.3d at 431, 125 Cal.Rptr. at 822. Defendants cite Arizona cases for the proposition that interest continues to become due, *e.g., Basso v. Allstate Insurance Co.,* 118 Ariz. 139, 575 P.2d 338 (1978), but those cases are distinguishable because they involved a conditional tender of the judgment, not an unconditional tender as occurred here. For these reasons, we reject the defendants' claims of error involving the interest award.

## SUFFICIENCY OF EVIDENCE

Defendants challenge four of the trial court's findings regarding the proper amount of just compensation on grounds that they were clearly erroneous and un-

supported by competent evidence. The challenged findings are:

1. There was insufficient evidence to conclude that a willing buyer would have paid a premium for the possibility that the zoning on the property could have been upgraded to commercial;

2. The highest and best use of the property was R–4R although there was a reasonable probability that all or part of it could have been rezoned for commercial;

3. A willing buyer would discount the per acre price of defendants' land by $10,000 to account for the costs of flood control development; and

4. The fair market value of the condemned property was $1,880,100.

It is the function of the trial court, not the appellate court, to weigh the evidence. *E.g., K & K Manufacturing, Inc. v. Union Bank*, 129 Ariz. 7, 628 P.2d 44 (App.1981). The evidence will be viewed in a light most favorable to sustaining the judgment. *Id.* The credibility of witnesses is a matter peculiarly within the province of the trier of facts. *E.g., Nutter v. Bechtel*, 6 Ariz. App. 501, 433 P.2d 993 (1967). If the judgment is based upon conflicting testimony, the trial court's findings will not be disturbed. *Viliborghi*, 55 Ariz. at 231, 100 P.2d at 179; *accord State v. Veatch*, 132 Ariz. 394, 646 P.2d 279 (1982). This rule applies "where the conflict in the evidence is between expert or opinion evidence as to the value of property, as well as to direct evidence." *Viliborghi, supra.*

The defendants, in contending that the trial court erred in rejecting a premium for the possibility of a zoning upgrade, rely in part on an "offer" by Safeway Stores to purchase ten acres of defendants' property at the southeast corner of Indian Bend and Hayden roads for $108,900 per acre. We find defendants' reliance on this "offer" is misplaced. First, the document was admitted into evidence solely to prove the level and nature of interest in the property, not its dollar value. Second, the document,

Exhibit 106 at trial, clearly is a mere option, and there is no evidence it was accepted by defendants much less exercised by Safeway Stores. Finally, the option is for ten acres at the northwest corner of the defendants' property, land that was not included in the area subject to the condemnation action.

Defendants also rely on what they term the undisputed fact that in all the comparable sales analyzed by both parties' appraisers, property with commercial zoning sold at a higher price than properties with residential zoning and that property with upgraded residential zoning sold for more than land where the residential zoning had not been upgraded. The relevance of this argument is unclear. The subject property here, which was zoned R1–43, residential, one house per acre, was valued for this case as if it had R–4R zoning, a classification that permits resorts and related commercial development. Furthermore, evidence was presented at trial that even if the property were rezoned for commercial use its appraised value would not increase. John Burroughs, an appraiser retained by the District, testified on September 14, 1982, that his appraised value of the defendants' property was "usually much higher" than the value of land in the area sold for residential development and that commercial properties in the area were not selling at higher prices than these residential properties. David N. Peterson, the appraiser hired by defendants, testified on September 9, 1982, that because there was a lot of undeveloped land in the area zoned for commercial-office, "there isn't as much of a demand for commercial-office as there is for, in my opinion, retail or residential."

To be entitled to an increase in valuation based on a probability of rezoning, the condemnee must introduce evidence that there is a reasonable probability of rezoning and must prove the amount a willing buyer would pay as a premium. *State v. McMinn*, 88 Ariz. 261, 355 P.2d 900 (1960). We conclude, as the trial court

apparently did, that defendants have failed to meet this burden.

 Similarly, defendants have failed to show error in the trial court's highest and best use finding. The court stated that the highest and best use of the entire property was development as permitted by R–4R zoning. Defendants base their assertion on the fact that the trial court found upgraded zoning from R–4R to be a "reasonable probability." By definition, defendants argue, the highest and best use after upgrading from R–4R would be high-density residences, such as R–3 which permits 12.5 units per acre, or commercial office and retail uses. What the trial court actually stated, however, was that "there was a reasonable probability that the property could have been upgraded in zoning, *or at least the northwest ten acres thereof . . .*" (emphasis added). The court further stated, as discussed above, that ". . . there is insufficient evidence to conclude that a willing buyer would have paid a premium for that possibility." Additionally, the defendants' appraiser, Mr. Peterson, concluded that 20 to 25 acres at the corner of Hayden and Indian Bend roads should be commercial, with the remainder a "good quality townhouses and condominium project at a density of about eight units per acre." Defendants in their brief characterize this plan for the remainder as consistent with R–4R zoning. We conclude that the evidence clearly is sufficient to support the trial court's finding.

Next, defendants challenge the trial court's findings that a willing buyer would discount the price per acre by $10,000 for flood control costs. Defendants' argument on this issue is primarily a discourse on purported errors in the testimony and engineering report of B.R. Jolly, the District's hydrologist. Jolly's work is described in defendants' brief as "an affront and an insult to the intelligence of any reasonable human being." By contrast, the defendants' expert, Leonard Halpenny, is described as "one of the most eminent hydrol-ogists in the west . . . a true expert . . . not an advocate" who presented an "unimpeachable, expert opinion."

 As discussed previously, the findings of the trial court will not be disturbed unless there has been abuse of discretion, particularly where the judgment is based upon a conflict of evidence, *Viliborghi, supra,* or the credibility of witnesses. *Nutter, supra.* The supreme court articulated the standard for trial courts reviewing evidence of witnesses as to the fair market value of property in *State Tax Commission v. United Verde Extension Mining Co.,* 39 Ariz. 136, 4 P.2d 395 (1931). The court stated:

> [W]here the amount of damages or the value of property . . . is concerned, and a large number of witnesses fix varying sums as the proper estimate of the value of such damages, [or] property . . . the trial court . . . [is] not bound to fix in . . . judgment the exact sum testified to by any one of the witnesses, especially when their conclusions are based upon a large number of factors, but may take part of the necessary factors from the testimony of one witness, and part from that of another, and *a result anywhere between the highest and lowest estimates which may be arrived at by using the various factors appearing in the testimony in any combination which is reasonable will be sustained by an appellate court.*

39 Ariz. at 140, 4 P.2d at 396 (citations omitted and emphasis added). The cost to cure flooding problems so that the condemned property may be put to its highest and best use is a proper item for consideration in determining fair market value. *Mastick v. State,* 118 Ariz. 366, 576 P.2d 1366 (App.1978). The burden of proving this cost is on the condemnor. *E.g., Bentz v. Nebraska Public Power District,* 211 Neb. 844, 320 N.W.2d 763 (1982).

 As the testimony of George Iannella, Scottsdale Engineering Services director on the date of valuation, makes clear, there

was substantial evidence before the trial court to support the finding that some sort of flood control project would be necessary. Additionally, the trial court heard the testimony of Richard Fletcher, a nearby landowner who testified that during the flood of 1972, he saw the defendants' property inundated with floodwater from the Indian Bend Wash. Mr. Burroughs, the District's appraiser, testified that in appraising the defendants' property, he divided it into developable and non-developable acres, allocating the cost of flood control only to the developable acres so that it eventually could be recaptured. He considered 38.5 of the defendants' 55.3 acres developable and allocated Mr. Jolly's cost estimate of $789,113 to those developable acres to arrive at a per-acre land development cost of $20,496. Mr. Halpenny, the defendants' expert, testified that the total cost of floodproofing defendants' property would be $33,600, the cost of constructing a protective dike. Large portions of the testimony were directed toward evaluating these alternative plans, with detailed discussions as to the necessity of floodproofing, the various methods that could be employed, and the estimates of the cost. As stated in *United Verde, supra,* the trial court is free to rely on segments of each expert's testimony, and a conclusion that falls anywhere between the high and low estimates will be upheld so long as it appears reasonable. 39 Ariz. at 140, 4 P.2d at 396; *see also Nutter, supra.* We conclude that substantial evidence exists in the record to support the trial court's finding that a willing buyer would discount the per acre price of defendants' land by $10,000 to account for costs of flood control development.

■ Defendants next challenge the court's finding that the fair market value of the condemned property was $1,880,100. Defendants assert that the testimony and appraisal of Mr. Burroughs was "so incompetent that it was prejudicial error for the trial court to admit this evidence or to give it any consideration." Defendants urge

the court to rely instead on the appraisals of the defendant, Robert Ong Hing, whose per acre valuation was as much as $70,000 higher than that of Mr. Peterson, his own appraiser, or of Mr. Peterson, who valued the property taken at $105,000 per acre but made no adjustments or deductions for any costs of floodproofing. Mr. Burroughs valued the property taken at $50,000 to $80,000 per acre and then deducted the costs of floodproofing. The trial judge fixed the amount of $100,000 per acre and deducted $10,000 per acre for floodproofing, thereby establishing the amount of compensation at $90,000 per acre. As discussed earlier, when the judgment is based upon conflicting testimony, the trial court's findings will not be disturbed absent an abuse of discretion. In our opinion, defendants have clearly failed to show such an abuse.

## ATTORNEY'S FEES AND EXPERT WITNESS FEES

In appealing the trial court's refusal to award attorney's fees, defendants allege that the District instituted the present action in bad faith and therefore should have to pay attorney's fees pursuant to A.R.S. § 12–341.01(C) (1982). As evidence, defendants rely on the fact that the District initially offered them $1.3 million less than the amount awarded as just compensation, and on what defendants describe as "obvious manipulation" by the District of its appraisal. Additionally, defendants allege that the District moved to condemn their property to benefit the City of Scottsdale, which had failed to acquire the property earlier by means of illegal conditional zoning.

To recover attorney's fees under A.R.S. § 12–341.01(C), defendants must show three things by clear and convincing evidence: that the District's claim constituted harassment, that the claim was groundless, and that·the claim was not made in good faith. The trial court made a specific finding that the defendants were not entitled to an award of reasonable attorney's fees.

302

Defendants have presented no grounds other than bare unsupported arguments that would justify reversing the trial court. *See Veatch, supra.*

Defendants also allege that the trial court violated the constitutional guarantee of just compensation by refusing to award attorney's and expert witness fees. The United States Supreme Court has rejected awards of these fees to condemnees, stating that the indirect costs to the property owner caused by the taking of his land generally are not part of just compensation. *U.S. v. Bodcaw Co.*, 440 U.S. 202, 203–04, 99 S.Ct. 1066, 1066–67, 59 L.Ed.2d 257 (1979). "[S]uch compensation is a matter of legislative grace rather than constitutional command." *Id.* at 204, 99 S.Ct. at 1067. Similarly, under the Arizona Constitution, the Arizona Supreme Court has rejected the assertion that attorney's and expert witness fees are recoverable. *E.g., State v. McDonald*, 88 Ariz. 1, 352 P.2d 343 (1960); *Mastick*, 118 Ariz. at 373, 576 P.2d at 1373. Thus, it is clear that the defendants' assertion of error as to the denial of attorney's and expert witness fees is absolutely without merit.

## ATTORNEY'S FEES ON APPEAL

The District asks that it be awarded its costs and attorney's fees in connection with this appeal pursuant to A.R.S. § 12–2106 and Rules 21 and 25, Arizona Rules of Civil Appellate Procedure. The District asserts that it has been forced to respond to an extensive brief that is substantially without sufficient grounds and that the appeal is frivolous. The District also asserts that the defendants have ignored controlling decisions of both the United States and Arizona Supreme Courts.

 We agree with the District that the defendants have ignored many pertinent cases and that a number of their arguments are without merit. However, there are no published Arizona decisions dispositively ruling on the constitutionality of

A.R.S. § 12–1127(B). For this reason, we decline to find that the defendants' appeal lacks sufficient grounds or is frivolous. Therefore, we do not award attorney's fees or costs to the District.

For the foregoing reasons, the judgment of the trial court is affirmed.

KLEINSCHMIDT and OGG, JJ., concur.