728 P.2d 1247

**CITY OF PHOENIX, a municipal corporation, Plaintiff-Appellee,**

v.

**Charles E. CAMPBELL and Charllie A. Campbell, husband and wife; Charles E. Campbell, Individually and as Trustee, Defendants-Appellants.**

**No. 1 CA–CIV 8561.**

Court of Appeals of Arizona, Division 1, Department A.

July 10, 1986.

Reconsideration Denied Aug. 8, 1986.

Review Denied Dec. 2, 1986.

Roderick G. McDougall, Phoenix City Atty. by Kent T. Reinhold, Asst. City Atty., Phoenix, for plaintiff-appellee.

Leonard M. Bell, P.C. by Leonard M. Bell, Scottsdale, for defendants-appellants.

MEYERSON, Judge.

In this eminent domain action, the defendant landowners appeal from that portion of the trial court's judgment denying their application for an award of compound interest at a rate in excess of the 10% per annum provided by A.R.S. § 44–1201(A). See A.R.S. § 12–1123(B). The appeal presents the following issues for our consideration: (1) whether the constitutionality of the statutory interest rate may vary depending upon the income tax bracket of the condemnee, and (2) whether the defendants could recover compound interest.

## I. FACTS

Defendants-appellants Charles E. Campbell (individually and as trustee) and Charlie A. Campbell owned a large parcel of unimproved land in Phoenix. In 1981, plaintiff-appellee City of Phoenix commenced this action to acquire the land for the Phoenix Mountain Preserve. One month later, the trial court entered an order allowing the City to take immediate possession of the parcel upon the posting of an approved bond in the sum of $1,000,-000. In 1984, the question of the fair market value of the land at the filing of the action was tried to a jury. The jury determined that value to be $1,400,000.

The City thereafter lodged a proposed form of judgment which contemplated an award of interest for the period from the possession date of June 15, 1981 until payment of the judgment at the statutory rate of 10% per annum. Defendants objected to this provision and on the authority of Tucson Airport Auth. v. Freilich, 136 Ariz. 280, 665 P.2d 1002 (1983) (Freilich), sought the trial court's approval of a rate of interest greater than 10% per annum and an order that the interest be calculated on a monthly compounded basis. The City opposed the defendants' request.

Following an evidentiary hearing, the trial court ruled in the City's favor as follows:

THE COURT FINDS for the time period in question, City of Phoenix general obligation bonds paid an average annual (tax-free) interest rate of 9.51%, 90–day U.S. Treasury notes paid an average annual interest rate of 10.87% and that six month Treasury bills paid an average annual interest rate of 11.62%.

The Court further finds that the legal rate of interest of 10% is not so unreasonably low as to be constitutionally infirm. Tucson Airport Authority v. Freilich, 136 Ariz. 280, 665 P.2d 1002 (1983).

The Court concludes that under Arizona law, interest on judgments is not compounded. The Court further concludes that there is no constitutional right to compounded interest on condemnation judgments.

This appeal followed.

Defendants contend that the uncontradicted expert evidence they presented established a basis for an award of interest in excess of the statutory interest rate of 10% under the guidelines of Freilich, and that the trial court erred in denying such an award. Defendants argue that the trial court departed from the analysis required under Freilich by failing to take into account the tax considerations applicable to the facts of this case. They also contend that under the rationale of Freilich it was error for the trial court to refuse to allow the compounding of interest. We conclude that the trial court correctly applied Freilich to the facts herein and affirm.

## II. LAW

█ It has long been settled that a landowner whose property is condemned for a public use is constitutionally entitled to just compensation for any delay in his receipt of payment for the condemned property. Seaboard Air Line Ry. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923). The Supreme Court recently

reaffirmed that principle in *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984). There the court stated:

[T]he Fifth Amendment does not forbid the Government to take land and pay for it later. But if disbursement of the award is delayed, the owner is entitled to interest thereon sufficient to ensure that he is placed in as good a position pecuniarily as he would have occupied if the payment had coincided with the appropriation.

104 S.Ct. at 2194 (citations omitted).

In *Freilich,* our supreme court ruled on the question of a condemnee's constitutional entitlement to interest in excess of the statutory rate. The court noted that where the legislature has designated a rate of interest by statute, that rate may be applied to a claim for just compensation in a condemnation case as long as the rate is reasonable and judicially acceptable. The court specifically declined to follow the federal practice of separately determining the particular interest rate to be applied in every case. Noting that the Arizona Legislature had raised the statutory interest rate from 6% to 10% not long before, the court stated:

In view of the recent legislative revision of the interest rate, we believe that the rate set by the legislature should be presumed reasonable and applied to all condemnation awards, unless the condemnee establishes by competent evidence that the application of that rate would violate the guarantee of just compensation. The condemnee could prove, for example, that the disparity between the statutory rate and the prevailing economic rate was so great that the former must be considered unreasonable and not judicially acceptable.

Turning to the facts of the instant case, the evidence presented at trial fell far short of establishing that the rate of 10% was unreasonable. There was no evidence of the real rate of return (i.e., differential between interest and inflation rate), returns from different types of investments, bond yields, tax considerations and other matters which a prudent

investor would take into consideration. Mere proof that one could have earned 15% to 18% on insured certificates of deposit for part of the relevant time period is not sufficient to establish that a prudent person investing in an appropriate portfolio of bonds or other obligations comparable to that of the condemnor, *United States v. Blankinship*, 543 F.2d [1272] at 1276, would have obtained a return so far in excess of the statutory rate that the latter must be considered so unreasonable as to be constitutionally infirm.

Accordingly, the trial court properly applied the statutory rate of interest. . . . 136 Ariz. at 284, 665 P.2d at 1006. *See also Flood Control Dist. of Maricopa County v. Hing,* 147 Ariz. 292, 709 P.2d 1351 (App.1985).

In this case, defendants presented the testimony of two expert witnesses in an attempt to supply the proof discussed in *Freilich.* The witnesses offered numerous investment portfolios in tax-exempt securities, several of which would have yielded defendants equivalent taxable yields in the neighborhood of 20% to 22% per annum over the period from June, 1981 through December, 1984. In accordance with *Freilich,* these portfolios were based on an investment in City of Phoenix general obligation bonds or similar AAA tax-exempt municipal bonds, and took into account the tax-exempt status of those investments. The portfolios also assumed periodic reinvestment of interest in appropriate short-term debt instruments. According to the expert evidence presented to the trial court, a prudent investor would not fail to reinvest the periodic proceeds of an investment of this size. The evidence was also uncontradicted that a prudent investor would not invest $1,400,000 at 10% per annum simple interest over the period in question.

We first consider whether the constitutionality of the 10% interest rate depends upon the equivalent taxable yield to the landowner. Defendants contend that it is not the yield on the face of the instrument (coupon rate) which controls but rather the equivalent taxable yield. An investment in tax-exempt securities will return a higher

equivalent taxable yield as the investor's tax bracket increases. United Business Service, *Successful Investing* 93 (1979). For example, an investor in the 50% tax bracket (such as defendants) who purchase tax-exempt securities yielding 10%, receive an equivalent taxable yield of 20%. Defendants urge that the constitutionality of the 10% rate of interest must be measured against this equivalent taxable yield. Defendants argue that *Freilich* specifically allows for consideration of these tax consequences. Although we agree that *Freilich* mentions "tax considerations" as a factor, we do not believe the court intended this to refer to the income tax bracket of the condemnee. We think this is so for two reasons. First, such a result would destroy the goal of uniformity which is at the core of the *Freilich* decision. Second, defendants' proposal would make the constitutionality of A.R.S. § 44–1201(A) hinge upon the financial status of the condemnee.

In *Freilich,* the court expressed its intention to seek uniform results in this area of the law:

> [W]e are concerned about the question of uniform treatment of condemnees which we believe is relevant both to the objectives of the legislature in setting a statutory rate and the constitution in requiring the payment of just compensation.

136 Ariz. at 283, 665 P.2d at 1005. The court further noted:

> Even under the federal view, there is "a strong judicial policy in favor of the establishment of a uniform rate of interest applicable to condemnation cases in order to avoid discrimination among litigants."

*Id.* (quoting *Miller v. United States,* 620 F.2d 812, 838, 223 Ct.Cl. 352 (1980)). Indeed, numerous state and federal cases have spoken of the importance of uniformity in calculating interest rates necessary for just compensation. *Georgia-Pacific Corp. v. United States,* 640 F.2d 328, 365, 226 Ct.Cl. 95 (1980); *Leverty and Hurley Co. v. Commissioner of Transportation,*

192 Conn. 377, 380, 471 A.2d 958, 960 (1984).

If, as defendants suggest, *Freilich* sanctions a result based upon the taxpayer's income tax bracket, uniformity of result could never be attained. For example, a 50% bracket taxpayer who has $1.4 million in property condemned may be able to secure an equivalent taxable yield of 20% if he invests in 10% tax-exempt bonds. On the other hand, if that taxpayer were in the 20% bracket, he could expect an equivalent taxable yield of 12.5% for the same type of investment. *See Successful Investing* at 93. Thus, the result in each case could vary depending upon the wealth of the condemnee. Although we are uncertain what tax considerations the court was alluding to in *Freilich,* we do not believe that the court was sanctioning the position asserted here by defendants.

Furthermore, under defendants' position, the constitutionality of the interest rate would hinge on the wealth of the condemnee. This result would not only destroy the goal of uniformity sought by *Freilich,* it would also create a sliding scale governing the constitutionality of the statutory interest rate based on the affluence of the condemnee. We do not believe that *Freilich* intended such a result. *Cf. Harper v. Virginia St. Bd. of Elec.,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (poll tax is unconstitutional); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (indigent has right to counsel on appeal). We therefore hold that the supreme court's reference to "tax considerations" does not authorize a trial court to consider the constitutionality of the 10% interest rate in light of the equivalent taxable yield to the condemnee based upon the condemnee's tax bracket. The constitutionality of the statutory rate of interest is measured against the coupon rate, not the equivalent taxable yield.

■ Finally, we examine defendants' claim that they should recover compound interest.[1] Defendants focus on *Freilich's* prudent person standard and argue that

---

**1.** We note also that the trial court correctly rejected evidence concerning reinvestment of

proceeds from a bond. *Freilich* holds that to

the prudent investor would not let interest income generated during the intervening period be "idle," but rather would compound the interest. Even *Freilich,* however, recognizes that the prudent person standard has certain limits. For example, the prudent person standard in *Freilich* is limited by restricting the investments to obligations comparable to the condemnor, even if this would not secure the highest yield.

More to the point, *Freilich* holds that the statutory interest rate of 10% *per annum* is presumptively reasonable. Implicit in such holding is the conclusion that compounding of interest is not an element of the constitutional right to just compensation.[2] *E.g., United States v. 125.71 Acres,* 54 F.Supp. 193 (W.D.Pa.1944); *Walker v. Department of Forests & Parks,* 284 Md. 357, 396 A.2d 262 (1979); *City of Austin v. Foster,* 623 S.W.2d 672 (Tex.Ct.App.1981).

Judgment affirmed.

GREER, P.J., and KLEINSCHMIDT, J., concur.

---

find an interest rate unconstitutional, the condemnee must show that

> a prudent person investing in an appropriate portfolio of bonds or other obligations comparable to that of the condemnor, would have obtained a return so far in excess of the statutory rate that the latter must be considered so unreasonable as to be constitutionally infirm.

136 Ariz. at 284, 665 P.2d at 1006 (citation omitted). Nowhere does the standard mention the possibility of reinvestment. Nor does *United States v. Blankinship,* 543 F.2d 1272, 1276 (9th Cir.1976) relied upon by *Freilich,* mention the possibility of reinvestment. Indeed, *Blankinship* holds that condemnees should present evidence of securities having a duration approximating the period during which the compensation was unpaid.

2. We acknowledge that if the court's discussion in *Freilich* were limited to the prudent investor standard alone, the compound interest issue and the reinvestment issue, *supra* note 1, might have to be decided differently.